[Crim. No. 14157. Second Dist., Div. Four. Sept. 24, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK JULIO SANFORD, Defendant and Appellant.

Raymond A. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark W. Jordan, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J. — Defendant and codefendant Mendoza were accused of possessing heroin for sale in violation of Health and Safety Code section 11500.5. In count II, Joseph

Trujillo and Jesus Candelaria were charged with possession of heroin in violation of Health and Safety Code section 11500. It was also alleged that defendant was convicted of prior felonies, including one violation of Health and Safety Code section 11160, and three violations of section 11500.

Defendant was tried with codefendants Mendoza, Trujillo and Candelaria. Jury trial was waived and the cause was submitted on the testimony contained in the transcript of the preliminary hearing. Defendant waived jury trial on the issue of the prior convictions. The court read and considered the transcript of the preliminary hearing. Defendant was found guilty as charged and a probation report was ordered. Defendants Candelaria and Trujillo were found guilty of a violation of Health and Safety Code section 11556, a lesser and necessarily included offense. The priors were found not true; probation was denied, and defendant was sentenced to state prison for the term prescribed by law, which sentence was ordered to run concurrently with any other time the defendant may be serving. The court recommended that defendant be placed in a facility where he could be treated for narcotic addiction.

This appeal was filed from the judgment of conviction.

Curtis Fesler, a police officer for the City of Los Angeles, assigned to the narcotics division, received information that defendant and another person named Conrad were living in apartment 101 at 1119 North Coronado. The officer checked the police department records and learned that defendant was wanted for escape from prison. The officer was personally acquainted with defendant, having arrested him five years previously for possession. The officer was also aware of a teletype of a warrant issued for defendant's arrest. That day he went to the police department record bureau and checked defendant's ''package'' again and obtained a picture of him, and noted that there were about five warrants in existence for defendant's arrest. He had not seen any warrants for defendant's arrest, but he did see cards on file with the police department which indicated the existence of those warrants. The officer did not have any physical evidence of a warrant with him when he went to the location.

Gary Cooper, a police officer for the City of Los Angeles, accompanied Officer Fesler to 1119 North Coronado on August 30, 1966, to arrest the defendant. Officer Key also went along and Officer Fesler told his fellow officers that defendant would run and fight.

Officer Fesler showed Betty Fisher, the manager of the apartments at 1119 North Coronado, a photograph of Frank Sanford and asked her if he lived there. Mrs. Fisher said it was Tony Aguilar and that he lived in apartment 101 and that the person in the photograph was the same person as defendant. Codefendant Mendoza was also living there. She added that they had numerous persons coming into the apartment and they had two doors to the apartment. She described one of the persons who was a frequent visitor and stated that the person was due to arrive that day. Officer Fesler asked her if she had any excuse to talk to defendant and she stated that she had; she said she could offer him a rent receipt.

Sergeant Ridenour accompanied Officer Key, and Key was instructed that if it was necessary he was to kick in the door because defendant would attempt to destroy any narcotics inside the apartment.

One of the officers went to the outside and Officer Key accompanied the manager to defendant's apartment. The manager knocked and a male voice answered. She said she had a receipt and he said he would be up for it later. She said. "Well, I have got it in my hand here." Officer Key heard a movement; Mrs. Fisher was told to leave; the door was opened, and the officer held his badge up in his hand and said, "Police officer."

Defendant then started to close the door, the officer stepped in, defendant swung his arm and hit the officer in the chest. Officer Key and Sergeant Ridenour tried to restrain defendant. Other officers came. Defendant threw four objects from his hand and one of them was a condom.

Mendoza was found standing over a toilet which had hair in it. Trujillo and Candelaria were bending over the sink and some objects, including a white can, were there.

Officer Fesler went into the kitchen, saw a large can of milk sugar and a teaspoon filled with numerous small balls of cotton and some blackish liquid material. There were four hypodermic needles, a quarter measuring spoon one-half filled with brownish powder resembling heroin and a balloon with powder resembling heroin.

Officer Fesler, who had been doing narcotics investigation for over eight years, testified that the manner in which the balloons and condoms were knotted and tied indicated that they contained heroin; that this is the manner in which heroin

is packaged in the Los Angeles area, the balloons being for resale, and the condition of the heroin appeared to be uncut. Uncut material is not ready for sale. Also found was a package of cigarettes which contained a quantity of cotton which is used to filter heroin at the time of injection.

The officer was of the opinion that the uncut heroin is normally diluted with milk sugar, about four or five times its original bulk, and then packed in small balloons for resale. The items seized were put in an envelope and sealed. About 160 fixes could be obtained from the amount of heroin found at the location.

All defendants seemed under the influence of heroin, and defendant and Mendoza had $485 and $415 on their persons.

A forensic chemist found that the balloons and the condoms contained 12 grams of heroin.

Defendant contends that there was an illegal search and seizure because: (1) there was no showing that the alleged arrest warrants actually existed; (2) there was a failure to comply with Penal Code sections 841 and 844; (3) the officers used a ruse to gain entry; and (4) evidence in the nature of narcotics was not admissible when an arrest was made for escape. Defendant also argues that there was no showing of venue, and that the evidence was insufficient to show possession for sale.

I

Defendant first asserts that Officer Fesler never actually saw the warrants for defendant's arrest, and that there was no showing that the warrants actually existed. ▪ Information from official police files or records may be relied on to support an arrest. (*People* v. *Stewart* (1961) 189 Cal.App.2d 176 [10 Cal.Rptr. 879].) Officer Fesler was aware of a teletype warrant for defendant's arrest, and he had also checked defendant's record at the police department, all of which is information from official channels. ▪ Furthermore, the requirement of immediate display of a warrant, with the necessity of possession of the warrant, was abolished by a 1957 amendment to Penal Code section 842. (See *People* v. *Miller* (1961) 193 Cal.App.2d 838, 841 [14 Cal.Rptr. 704]; *People* v. *Stewart, supra* (1961) 189 Cal.App.2d 176, 179.)

II

Defendant asserts that the officers failed to comply with

procedures for arrest set forth in Penal Code sections 841[1] and 844.[2]

■ Contentions concerning defendant's illegal arrest under Penal Code section 841 cannot be raised on appeal where defendant failed to raise the objection at the trial level. (*People* v. *Garcia* (1959) 174 Cal.App.2d 525 [344 P.2d 855].)

■ Defendant's assertion that the officers did not comply with Penal Code section 844 is not well taken. The facts reveal that, after the door was opened, the officer held his badge in his hand and said, ''Police officer.'' This was sufficient substantial compliance with Penal Code section 844. The officer need not comply with every detail of section 844 when, as here, the householder has indicated by his conduct that no further explanation or information is desired and that entry is being refused without regard to the officer's reason or purpose. (Cf. *People* v. *Cockrell* (1965) 63 Cal.2d 659 [47 Cal. Rptr. 788, 408 P.2d 116].) Defendant relies on *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], and on *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal. Rptr. 1, 437 P.2d 489]. But those cases dealt with entries which did not comply with section 844; they are not pertinent here.

### III

■ Defendant asserts that the police used a ruse to gain entry, and that where evidence is gained by such an entry, the evidence obtained is illegal. We do agree with the defendant that a ruse was used to gain entry. It has been held that where entry is gained by subterfuge, the search and evidence obtained was illegal. (*People* v. *Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865].) However, in those cases relied on by defendant there was no probable cause that would justify an arrest apart from information gained by the police as a *result*

---

[1]Penal Code section 841 reads: ''The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape.

''The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested.''

[2]Penal Code section 844 reads: ''To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.''

*of the entry by trick or ruse.* (*People* v. *Reeves* (1964) 61
Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Miller,
supra,* 248 Cal.App.2d 731; *People* v. *Hodson* (1964) 225 Cal.
App.2d 554 [37 Cal.Rptr. 575].) In the case before us *probable cause for arrest existed prior to and apart from the ruse
or trick* used to get defendant to open his door and therefore
defendant's cases are distinguishable and have no application
here. We do not believe that validity of an arrest for which
there exists independent probable cause is vitiated by an
entry by trick or ruse.

The situation here is somewhat analogous to a situation
before the court in *People* v. *Chimel* (1968) 68 Cal.2d 436
[67 Cal.Rptr. 421, 439 P.2d 333]. In *Chimel,* defendant's
arrest was not invalid in spite of the deficiencies in the felony
complaint to sustain the warrant where the arrest was predicated on probable cause regardless of the validity of the warrant.[3] In the case before us defendant's arrest was valid in
spite of the ruse, since the arrest was predicated on probable
cause apart from the ruse.

## IV

 Defendant contends that, even if the right to arrest
him did exist, no right to search existed beyond the scope of
the warrants (which were for the crime of escape). Defendant
asserts that a search of the premises should have been limited
to weapons and that the evidence of narcotics is out of the
scope of authority for the search. However, the officers in the
case before us did not make a search for narcotics until after
they had probable cause to make such a search. After the
officers entered defendant's apartment and during the grappling with defendant, defendant threw four objects, one of
which was a condom. An officer need not blind himself
to what is in plain sight (*People* v. *Roberts* (1956) 47 Cal.2d
374 [303 P.2d 721], and that which is in plain view is not a
search. (*People* v. *Carr* (1966) 244 Cal.App.2d 99, 104 [52
Cal.Rptr. 813]; *People* v. *Lindogan* (1963) 212 Cal.App.2d
466, 472 [27 Cal.Rptr. 905].) Upon discovering the
heroin-filled condom, the officers then had the right to arrest
(Pen. Code, § 836) for possession of heroin, and they also had
a right to make a search as incident to that arrest. (*People* v.
*Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531].)

Furthermore, defendant has cited us to no place in the

---

[3]See, also, *People* v. *Chrisman* (1967) 256 Cal.App.2d 425, 447 [64
Cal.Rptr. 733].

record where he objected to the evidence and this point may not be raised for the first time on appeal. (*People* v. *Garcia*, *supra* (1959) 174 Cal.App.2d 525, 530.)

## V

■ Defendant asserts that the court lacked jurisdiction because there is no proof of venue.[4]

The case of *People* v. *Pollock* (1938) 26 Cal.App.2d 602 [80 P.2d 106], held that reversible error was committed where there was no showing of venue. However, venue may be proved circumstantially and the trier of fact can draw inferences on the issue of venue. (*People* v. *McGregar* (1891) 88 Cal. 140, 143 [26 P. 97].) *In People* v. *Kutz* (1960) 187 Cal. App.2d 431, 434 [9 Cal.Rptr. 626], venue was proved by the fact that the victim was in a San Francisco hospital, the arrest was made by San Francisco police and the victim went to defendant's office at 2080 Sutter Street. The court took judicial notice that Sutter was a San Francisco street. In the case before us the arrest was made by Los Angeles police and we take judicial notice that North Coronado is a Los Angeles street. Venue was therefore circumstantially proved and there is no error.

## VI

■ Defendant's last contention is that there was an insufficient showing that defendant possessed the narcotics for sale since the record is void of evidence of actual sale and the amount of heroin found could have conceivably been for personal use only.[5] Officer Fesler, who had been doing narcotics investigation for over eight years, testified that the balloons and condoms were knotted and tied in a certain manner, which was the way the balloons are knotted and tied when they contain heroin for resale. This fact is more than sufficient evidence that the heroin was possessed for purposes of sale.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied October 16, 1968.

---

[4]The parties disagree as to whether this question can be raised for the first time on appeal. Since we hold below that there was sufficient proof of venue, we need not decide whether defendant can raise this issue now. However, in *In re Huber* (1930) 103 Cal.App. 315 [284 P. 509], the court held that, by virtue of sections 777 and 811 of the Penal Code, the question of lack of proof of venue could be considered on habeas corpus, since it went to the jurisdiction of the court. Being available on habeas corpus, we can consider it on appeal.

[5]Officer Fesler testified that there were possibly 166 shots or more of heroin, and conceivably a heavy user could use that amount for himself.