[No. B006432. Second Dist., Div. Six. Aug. 13, 1985.]

In re WILLIAM J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM J., Defendant and Appellant.

## COUNSEL

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Here we hold that a police officer may stop the driver of an automobile if the officer has a reasonable suspicion that a passenger in the automobile has committed an offense.

Appellant William J., a minor, admitted the allegations in count I of a petition filed in juvenile court pursuant to Welfare and Institutions Code section 602, alleging he unlawfully possessed a billy, in violation of Penal Code section 12020, subdivision (a).[1]

The trial court properly denied appellant's motion to exclude evidence pursuant to section 1538.5. We therefore affirm the judgment.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## FACTS

On February 28, 1984, Officer Robert C. Hopkins of the Simi Valley Police Department observed Richard Dodes sitting in the back seat of a 1971 Chevrolet driven by appellant. Not more than a week earlier, Hopkins, "who knew Dodes," had received information that Dodes had an outstanding warrant for his arrest. Hopkins testified that he received the information as a result of either the dispatcher advising him of a teletype that showed a warrant on Dodes, or of his having seen the teletype.

Although Hopkins did not know appellant, who was driving the car, and had no suspicion that he was involved in any crime, Hopkins, nevertheless, stopped the car because of his information concerning Dodes. As Hopkins approached the car he saw a brown billy fashioned from a wooden dowel in plain view on the floor, at the feet of Dodes. When Hopkins picked up the club, appellant spontaneously said that the club belonged to him, and that he used it as protection in his job as a security guard. Hopkins then called the police station and confirmed that there was an outstanding warrant on Dodes.

## DISCUSSION

██ The issue here must be decided according to the federal Constitution. Proposition 8, passed by the voters in the June 1982 California Primary Election, which added section 28, subdivision (d) to article I of the California Constitution, "abrogated . . . a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)

██ Amendments to section 1538.5, enacted after the passage of Proposition 8, did not revive "exclusionary rules abrogated by Proposition 8. Therefore, although section 1538.5 continues to provide the exclusive procedure by which a defendant may seek suppression of evidence obtained in a search or seizure that violates 'state constitutional standards,' a court may exclude the evidence on that basis only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment. [Fn. omitted.]" (*Id.* at p. 896.)

██ Under federal standards, police may make an investigatory stop of a person, in the absence of probable cause to arrest, when the police have a reasonable suspicion, based on specific and articulable facts, that the person stopped has been involved in a crime. (*United States* v. *Hensley* (1985) 469 U.S. 221 [83 L.Ed.2d 604, 105 S.Ct. 675].)

The *Hensley* court admitted that "[t]his is the first case we have addressed in which police stopped a person because they suspected he was involved in a completed crime. In our previous decisions involving investigatory stops on less than probable cause, police stopped or seized a person because they suspected he was about to commit a crime, e.g., *Terry, supra,* [*Terry* v. *Ohio,* 392 U.S. 1 (20 L.Ed.2d 889, 88 S.Ct. 1868)], or was committing a crime at the moment of the stop, e.g. *Adams* v. *Williams,* 407 U.S. 143 . . . ." (*Id.,* at p. 611 [83 L.Ed.2d at p. 611].)

■ In placing limits on stops to investigate past criminal activity, the court stated that "[t]he proper way to identify the limits is to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes. That test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion. [Citations.] When this balancing test is applied to stops to investigate past crimes, we think that probable cause to arrest need not always be required." (*Id.,* at pp. 611-612 [83 L.Ed.2d at pp. 611-612].)

In *Hensley,* the St. Bernard Police Department issued a "wanted flyer" in several adjoining cities for defendant suspected of assisting in a robbery. A Covington police officer saw defendant driving his car and detained him. A second officer arrived moments later. He recognized the passenger, who was a convicted felon, and arrested him when he saw a revolver protruding from underneath the passenger's seat. After a search of the car revealed other handguns, the driver was also arrested. The court held that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, [citation], to pose questions to the person, or to detain the person briefly while attempting to obtain further information. [Citation.]" (*Id.,* at p. 614 [83 L.Ed.2d at p. 614].) Such an investigatory stop, even in the absence of probable cause, "promotes the strong government interest in solving crimes and bringing offenders to justice." (*Id.,* at p. 612 [83 L.Ed.2d at p. 612].) "Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, *United States* v. *Robinson, supra,* [536 F.2d 1298] and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." (*Id.,* at p. 615 [83 L.Ed.2d at p. 615].)

■ In the instant case, Officer Hopkins had a reasonable suspicion based on specific and articulable facts that Dodes had an outstanding warrant

for his arrest. Hopkins had "frequent contacts" with Dodes. He checked areas where Dodes was known to loiter, and ran "informational checks" to determine whether Dodes had any outstanding warrants. When Hopkins saw Dodes in the car driven by appellant, he knew Dodes had an outstanding warrant, either because a dispatcher had told him of the warrant or because he saw the teletype with the warrant information. Thus, he was not acting on a "hunch," or out of curiosity. Moreover, the information was "at the most" one week old. In either case, Hopkins objectively and reasonably relied on the information since it came through official channels. (*People* v. *Buckey* (1971) 19 Cal.App.3d 183, 187 [96 Cal.Rptr. 648]; *People* v. *Sanford* (1968) 265 Cal.App.2d 960, 962, 964 [71 Cal.Rptr. 790].) Hopkins' subjective grounds for believing the existence of the warrant was reinforced because he knew about Dodes' past criminal behavior. In *Hensley,* the reason for the defendant's stop was a "wanted flyer" which only stated that the police department issuing the flyer wanted defendant for a robbery investigation. Here, Hopkins had even better grounds for detaining Dodes, because he reasonably suspected there was an arrest warrant for Dodes.

So far, we have centered our discussion on the grounds for stopping Dodes, but it was appellant, not Dodes that was driving. ■ Appellant contends that since Officer Hopkins had no suspicion of criminal activity or wrongdoing by him, the officer may not stop his vehicle. *Hensley,* he argues, allows an investigatory stop only if there is a reasonable suspicion that the person driving was involved in a completed felony. Therefore, he argues, he could not be stopped. If we were to adopt such an untenable rule, then legions of criminals throughout the land could hire drivers, who are upstanding citizens with no past criminal involvement, to chauffeur them around our streets and highways in open, notorious view. As smug passengers they could wave to the police who could only watch in frustration as they passed by. A momentary stop of an automobile by police to investigate a passenger reasonably believed to be involved in a past crime is proper. It creates a minimal inconvenience to the driver of that automobile, when balanced against the government's interest in apprehending criminals.

■ Appellant contends that even if the detention were proper, *People* v. *McGaughran* (1979) 25 Cal.3d 577, 584, 586 [159 Cal.Rptr. 191, 601 P.2d 207] applies. *McGaughran* prohibits an officer from detaining occupants of an automobile stop for a traffic infraction an unreasonable time in order to run a warrant check. Here, Officer Hopkins did not unjustifiably delay appellant while attempting to determine whether he committed a crime. Rather, as soon as he approached appellant's car he saw the billy, and appellant immediately admitted that the billy belonged to him. Since Officer Hopkins had grounds to stop the automobile, he was justified in seizing any evidence of a crime in plain view.

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.