[No. F012583. Fifth Dist. July 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ED DEAN CONWAY, Defendant and Appellant.

**COUNSEL**

Douglas L. Hurt, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gary A. Binkerd and Margaret Garnand Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, J.**—The sole question presently before the court is whether an officer who has accurate information received through official channels that an arrest warrant recently has been issued for an individual may briefly detain that person to determine whether the warrant is still outstanding. We conclude the officer's knowledge of a recent arrest warrant creates a reasonable suspicion the individual was involved in criminal activity thus justifying a brief detention to determine the status of the warrant.

### FACTS

The facts are not disputed. On December 3, 1988, appellant was standing in the front yard of a residence when Visalia Police Officer McIntosh drove by. Officer McIntosh knew appellant as he previously had arrested him. The officer recalled seeing appellant's name on a list of persons with outstanding arrest warrants. The officer stopped his car and called the dispatcher to seek confirmation of the existence of the warrant. He approached and detained appellant to await the results of the warrant check.

The officer noted appellant had a buck knife in a sheath on the right side of his belt. For his safety, the officer took this and then frisked appellant

when he saw bulges in appellant's pockets. While his pockets were being searched, appellant put his hands in back of his head as if stretching. The officer then saw a small cellophane wrapping fall to the ground. He retrieved it and found the cellophane package contained a white powdery substance. The officer arrested appellant. Laboratory analysis showed the powder to be cocaine.

Two or three minutes later the officer received a reply on his call for confirmation of the outstanding arrest warrant. The warrant had been served two weeks earlier. The officer testified at the preliminary hearing that, other than his knowledge of a recently issued arrest warrant, he had no reason to stop appellant. At the suppression hearing, a warrant list, issued November 1, 1988, a little more than a month prior to the stop here, was introduced and included appellant's name.

Based on the preliminary hearing transcript, the trial court found Officer McIntosh honestly believed a warrant was outstanding for appellant, and that the warrant was "relatively fresh." The court further found that, at the time the detention was initiated, the officer's belief was reasonable.

After his suppression motion was denied, appellant pleaded guilty to one count of possession of cocaine. (Health & Saf. Code, § 11350.) He was placed on three years' probation contingent on serving two hundred days in county jail. He filed a timely notice of appeal.

I

*Was the Detention Lawful?*

■ In reviewing a denial of suppression motion, we are bound by all factual findings, express or implied, made by the trial court that are supported by substantial evidence. Where, as here, the evidence related to the detention is uncontested, the only issue to be decided is the reasonableness of the officer's conduct. On this issue, we exercise our independent judgment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

■ Relying on *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761], appellant argues the detention in the present case was unlawful. In *Ramirez*, police officers detained the defendant because of purported suspicious circumstances. The officers requested a warrant check and received information that the defendant had an outstanding felony warrant. The defendant was arrested and, during the booking search, PCP was discovered. Subsequently, it was discovered the warrant had been

recalled some six months earlier. The court held: "Had the recall of the warrant for defendant's arrest been entered into the appropriate data processing systems by the responsible law enforcement personnel, Officer Brown would have received an accurate response to his warrant check, i.e., he would have been informed there were no outstanding warrants for defendant's arrest. Because the recall of the warrant was, or should have been, within the 'collective knowledge' of the police, we cannot permit the arresting officer to rely with impunity on his fellow officers' errors of omission, but must impute their accurate knowledge to him." (34 Cal.3d at p. 547.)

*Ramirez* is distinguishable and therefore not controlling. *Ramirez* directs itself to the improper conduct of the police in failing to place the correct information in the computer. There, the police were not allowed to benefit from their own negligence. Here, the officer recently had received *accurate* information through official channels that a warrant was outstanding for appellant's arrest. An officer may reasonably rely on information received through official channels. (*In re William J.* (1985) 171 Cal.App.3d 72, 77 [217 Cal.Rptr. 163].) The officer briefly detained appellant while awaiting confirmation of the warrant. He received correct information that the warrant previously had been served. Thus, unlike *Ramirez,* this is not a case of official transmission of misinformation.

More importantly, *Ramirez* involved an *arrest* based solely on a recalled bench warrant. Here, the officer did not arrest or search appellant on the basis of the warrant. Rather, he merely *detained* appellant in order to determine whether the warrant was outstanding.

Indeed, perspective can be gained from the distinction between an arrest and a detention and the interests they respectively address. ■ An arrest requires probable cause to be justified. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].) Probable cause is defined as: "[S]uch a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*Id.* at p. 412.)

■ Comparatively, a detention rests on a balancing test. "In *Terry* [v. *Ohio* (1968) 392 U.S. 1] [20 L.Ed.2d 889, 88 S.Ct. 1868] and subsequent cases, [the United States Supreme] Court has held that, consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances." (*United States* v. *Hensley* (1985) 469 U.S. 221, 226 [83 L.Ed.2d 604, 610, 105 S.Ct. 675].) In *Hensley, supra*, the high court held the police may make an investigatory stop of a person, in the absence of probable cause to arrest, when the police have a reasonable suspicion, based on specific and articulable facts, that the person stopped

has been involved in a crime. The court stated: "The proper way to identify the limits [on investigatory stops to investigate past criminal conduct] is to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes. That test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion. [Citations.] When this balancing test is applied to stops to investigate past crimes, we think that probable cause to arrest need not always be required." (*Id.* at p. 228 [83 L.Ed.2d at pp. 611-612].)

In *Hensley,* a police officer issued to several other police departments in the area a "'wanted flyer'" for the defendant. An officer from one of the other departments saw the defendant driving a car and detained him. The passenger, recognized by one of the officers as a convicted felon, was arrested when the officer saw a revolver protruding from underneath the passenger seat. A search of the car revealed other handguns and the defendant also was arrested.

The court rejected the notion that "'the Fourth Amendment does not permit police officers in one department to seize a person simply because a neighboring police department has circulated a flyer reflecting the desire to question that individual about some criminal investigation that does not involve the arresting officers or their department.'" (*United States* v. *Hensley, supra,* 469 U.S. at pp. 229-230 [83 L.Ed.2d at p. 613].) The court concluded: "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, [citation], to pose questions to the person, or to detain the person briefly while attempting to obtain further information. See *Adams* v. *Williams,* 407 U.S. 143, 146 (1972) ('A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time')." (*Id.* at p. 232 [83 L.Ed.2d at p. 614].)

The court further concluded the flyer justified detaining the individual while the officers ran a warrant check. The court stated: "As an experienced officer could well assume that a warrant might have been obtained in the period after the flyer was issued, we think the flyer would further justify a brief detention at the scene of the stop while officers checked whether a warrant had in fact been issued." (*United States* v. *Hensley, supra,* 469 U.S. at p. 234 [83 L.Ed.2d at p. 616].)

In *In re William J., supra*, 171 Cal.App.3d 72, the court found the requisite reasonable suspicion to justify an investigative detention of past criminal conduct based on facts similar to those presented herein. In *William J.,* Officer Hopkins observed Richard Dodes riding in a car driven by the defendant. The officer, "'who knew Dodes,'" recently had received information that Dodes had an outstanding warrant for his arrest. The officer stopped the car because of the information regarding Dodes. The officer approached the car and saw a "brown billy fashioned from a wooden dowel in plain view on the floor, at the feet of Dodes." (*Id.* at p. 75.) When the officer picked up the club, the defendant said it belonged to him. The officer then called the station and confirmed the existence of an outstanding arrest warrant on Dodes. (*Ibid.*)

Relying on *Hensley,* the appellate court concluded the detention was based on a reasonable suspicion supported by specific and articulable facts. The court stated: "In the instant case, Officer Hopkins had a reasonable suspicion based on specific and articulable facts that Dodes had an outstanding warrant for his arrest. Hopkins had 'frequent contacts' with Dodes. He checked areas where Dodes was known to loiter, and ran 'informational checks' to determine whether Dodes had any outstanding warrants. When Hopkins saw Dodes in the car driven by appellant, he knew Dodes had an outstanding warrant, either because a dispatcher had told him of the warrant or because he saw the teletype with the warrant information. Thus, he was not acting on a 'hunch,' or out of curiosity. Moreover, the information was 'at the most' one week old. In either case, Hopkins objectively and reasonably relied on the information since it came through official channels. [Citations.] Hopkins' subjective grounds for believing the existence of the warrant was reinforced because he knew about Dodes' past criminal behavior. In *Hensley,* the reason for the defendant's stop was a 'wanted flyer' which only stated that the police department issuing the flyer wanted defendant for a robbery investigation. *Here, Hopkins had even better grounds for detaining Dodes, because he reasonably suspected there was an arrest warrant for Dodes.*" (*In re William J., supra,* 171 Cal.App.3d, at pp. 76-77, italics added.)

 Similarly, here, the officer was not acting on a mere hunch or speculation. Rather he recognized defendant from prior contacts and recalled that his name recently had appeared on a departmental list of persons for whom arrest warrants had been issued. As in *William J.,* here, the detention was justified on the grounds the officer had a reasonable suspicion based on specific and articulable facts that there was an outstanding warrant for defendant's arrest.

Concededly, *William J.* is distinguishable: unlike the present case, there the warrant was still outstanding. Nonetheless, in both *William J.* and the

present case, the "reasonable suspicion" justifying the detention was based on the officer's reasonable belief that there was an outstanding warrant. In both cases, the officer reasonably relied on information received through official channels.

Moreover, appellant's assertion that the officer must seek confirmation of the warrant prior to detaining the individual is untenable. Appellant would require an officer who had a reasonable suspicion supported by specific and articulable facts that an individual had been involved in criminal conduct to sit idle until the warrant had been confirmed and probable cause established. His argument is supported neither by reason nor law. As the United States Supreme Court stated in *Hensley:* "Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." (*United States* v. *Hensley, supra*, 469 U.S. at p. 229 [83 L.Ed.2d at p. 612].)

In the present case, the trial court concluded the officer's belief was reasonable and that the officer was acting on "a relatively fresh warrant." Certainly, a court could conclude in a particular case that the age of the officer's information and the circumstances of its acquisition were such that they reasonably could not be relied on to detain. That conclusion was not compelled here: we cannot find as a matter of law that the officer's reliance on a month-old warrant list was unreasonable under the facts of this case.

Unlike the cases on which appellant relies, the present case does not involve an officer acting in good faith on the basis of official transmission of misinformation. The legality of the underlying warrant that formed the basis of the officer's reasonable suspicion is not challenged. Appellant's argument simply asserts the status of the warrant must be imputed to the detaining officer without affording him an opportunity to take reasonable steps to confirm.[1] Appellant claims that, because the information obtained

---

[1] Respondent's reliance on *People* v. *Palmer* (1989) 207 Cal.App.3d 663, 670 [255 Cal.Rptr. 55] is misplaced. Relying on *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], the *Palmer* court held the Fourth Amendment does not require suppression of evidence seized incident to an arrest made in good faith reliance on a facially valid arrest warrant. In the present case, appellant was not arrested on the basis of the warrant. Had the officer *arrested* on the basis of *misinformation* regarding the status of the warrant, the arrest would be unlawful regardless of the officer's good faith. Likewise, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow

when the officer called for confirmation indicated the warrant previously had been served, no reasonable suspicion existed at the time of the detention. Under appellant's argument, an otherwise legal detention based on specific and articulable facts that a defendant was engaged in criminal conduct would become illegal if it subsequently were discovered the individual was in fact not engaged in criminal conduct.

Moreover, we find nothing persuasive in an argument under which the reasonableness of the detention would turn on facts unknown to the officer at the time of the detention. Acceptance of this argument would result in rendering conduct that was reasonable at the outset unreasonable based on after-discovered facts. For example, assume an officer has a reasonable suspicion based on specific and articulable facts that a warrant is outstanding for an individual. He briefly detains the individual in order to determine the status of the warrant. If his call for confirmation reveals the warrant is outstanding, the detention is lawful. If on the other hand, the warrant has been served, the detention is unlawful.

Armed with the knowledge a warrant recently had been issued, it is reasonable for the officer briefly to detain an individual in order to determine the status of the warrant. No public interest is furthered by a rule that would render reasonable police conduct unlawful thus requiring suppression of evidence. In the words of Justice White in *Stone* v. *Powell* (1976) 428 U.S. 465 [49 L.Ed.2d 1067, 96 S.Ct. 3037]: "[E]xcluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." (*Id.* at pp. 539-540 [49 L.Ed.2d at p. 1114], dis. opn. of White, J.)

We conclude that under the facts of the present case, the officer's reasonable belief based on accurate official information that there existed an outstanding warrant for appellant's arrest justified the brief detention to determine the status of the warrant. Because the brief detention to obtain information on the status of the warrant was justified, the subsequently obtained information that the warrant previously had been served does not render the detention unlawful.

The governmental interest in apprehending individuals with outstanding arrest warrants outweighs the minimal intrusion on the liberty of an

officers to make an arrest." (*Whiteley* v. *Warden* (1971) 401 U.S. 560, 568 [28 L.Ed.2d 306, 313, 91 S.Ct. 1031].) Here, however, the officer's reasonable belief based on specific and articulable facts that a warrant was outstanding provided sufficient reasonable suspicion to justify a brief detention to determine the status of the warrant.

individual occasioned by a brief detention to determine the status of the warrant. The detention and investigation, of course, must be limited to the purpose of the stop. (*In re James D.* (1987) 43 Cal.3d 903, 915 [239 Cal.Rptr. 663, 741 P.2d 161].) The sole purpose of the detention is to determine whether or not an arrest warrant is still outstanding. Accordingly, absent facts supporting further action, where the confirmation call indicates the warrant is no longer outstanding, the individual would be free to leave. Conversely, should the confirmation call reveal a valid outstanding warrant, the individual could be arrested.

In the present case, the officer's knowledge that a warrant recently had been issued justified a brief detention to determine the status of the warrant. Clearly, under *Ramirez,* an arrest on the basis of the officer's belief the warrant was outstanding, when in fact it was not, would not have been supported by probable cause. Here, however, the officer did not arrest appellant on this basis, but merely detained him while seeking confirmation of the warrant.

The judgment is affirmed.

Best, Acting P. J., and Vartabedian, J., concurred.