[No. B078977. Second Dist., Div. Three. Mar. 24, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE WILLIAMS, Defendant and Appellant.

**COUNSEL**

Paul A. Kopf, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LUKE, J.*—

### INTRODUCTION

Willie Williams (Williams) appeals from the judgment entered following a jury trial in which he was convicted of possession of a controlled substance, cocaine base, in violation of Health and Safety Code section 11350, a lesser included offense to that charged in the information filed against him.

As to the offense charged, the jury found him not guilty of possession for sale of cocaine base, in violation of Health and Safety Code section 11351.5. In an amendment to the information, it was further alleged that he had a prior conviction for possession of a controlled substance, in violation of Health and Safety Code section 11351, within the meaning of Penal Code section 667.5, subdivision (b), which the jury, in a bifurcated proceeding, found to be true.[1]

Williams's trial was preceded by two preliminary hearings. The first hearing resulted in dismissal of the charges against him, based on the magistrate's granting of his motion to suppress the cocaine evidence pursuant to Penal Code section 1538.5.[2] The charges were later refiled by the People and, at the conclusion of the second hearing where no suppression motion was made, he was held to answer.

At his arraignment, Williams pled not guilty to the offense charged and denied the special allegations. Prior to the commencement of the trial, his second Penal Code section 1538.5 motion was denied.

Just before the prospective jurors were brought in, Williams tried to get the court's attention, saying: "Your honor, excuse me . . . ." The court

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Williams actually admitted this prior conviction, but maintained that it was based on a 1985 case for which he was not convicted until 1991.

[2]The reporter's transcript of these proceedings was the subject of Williams's request for judicial notice or augmentation of the record, filed concurrently with appellant's supplemental opening brief, which this court granted pursuant to rules 12(a), 33(a) and (b), and 43 of the California Rules of Court.

replied: "Just a minute, sir. The jurors are coming in." After the jurors had left, Williams explained that even though he was allowed to wear civilian clothes, he still had on a wristband, indicating to the jurors that he was in custody.[3] The court disagreed with Williams's comment that this would deprive him of his rights, stating: "I don't think it does, sir."

On conviction, he was sentenced to state prison for the high term of three years as a base term, plus one additional year for the prior conviction enhancement, for a total term of four years. He was given credit for 120 days in custody, including 80 days actual custody and 40 days good time/work time.

A notice of appeal was timely filed by Williams on August 16, 1993.

## STATEMENT OF FACTS

On December 11, 1992, about 6:30 p.m., two Los Angeles County deputy sheriffs, traveling southbound on Vermont Avenue approaching 99th Street, decided to run a random license plate check on a black 1965 Pontiac Bonneville which was directly in front of them with three occupants. The check produced information that there was an outstanding traffic warrant, dating back to 1989 for failure to appear on an expired registration, in the name of Nelva Smith, a woman described as being approximately 50 years of age. The deputies initiated a traffic stop to ascertain whether the person named in the warrant was one of the occupants of the vehicle,[4] not knowing at the time that the vehicle had been properly registered to Williams since he purchased it four months earlier on August 12, 1992.[5]

One of the deputies approached the driver's side of the vehicle, occupied by Williams in the driver's seat, while the other approached the passenger side, the front seat of which was occupied by Williams's wife with his daughter occupying one of the rear seats.[6] As the occupant of the front

---

[3]At a later stage in the proceedings, Williams explained to the bench officer that he "told the judge on the last case that . . . [he] was discriminated by wearing this short-sleeved shirt."

[4]Williams claims he was told initially that the reason for the stop related to the deputies working gang patrol and wanting to check and see if he had any guns.

[5]Williams contends that had the officer making the license check pushed another button on the computer, he would have known, through viewing a subsequent screen, that Nelva Smith was no longer the vehicle's owner.

[6]One of the deputies testified that, as he approached the vehicle, he could see that the woman inside was not approximately 50 years of age.

passenger seat rolled down the window to talk to the officers,[7] first one deputy and then the other immediately smelled what he believed to be burnt marijuana coming from within the vehicle. All three occupants were ordered to exit the vehicle, so that the deputies could determine the source of the odor, and as Williams exited, he stated: " 'I just have a little weed I bought up the street.' "

The deputy on the passenger side entered the vehicle, without Williams's consent or objection, and discovered two "roaches," i.e., very small portions of partially smoked hand-rolled marijuana cigarettes, in the ashtray. Continuing his search, he found a tin box on the floorboard of the vehicle containing three baggies (less than one ounce) of marijuana, a small pair of scissors and some rolling paper, and underneath the dashboard on the driver's side a magnetic hide-a-key box which contained "five tinfoil[ed] bindles of an off[-]white substance" (a total of eleven rocks) believed to be rock cocaine.

As the deputy who conducted the search was returning to his patrol car with the tin box and magnetic holder in hand,[8] Williams said: " 'That's the weed I told you about.' " The recovered items were then taken into custody and Williams was placed under arrest, being subjected to a patdown field search by the other deputy. During the course of the contact, the deputies ascertained that Williams was the owner of the vehicle, though he claimed he lent it to his wife, brother, daughter and son at various times.

ISSUES

Williams claims on appeal that:

1. The trial court's refusal to permit him to remove his wristband, indicative of his custodial status in the presence of the jury, was violative of his due process and equal protection rights;

2. The stop of his vehicle following a routine warrant check violated his Fourth Amendment rights under the United States Constitution;

3. The use of CALJIC No. 2.03 (consciousness of guilt falsehood) constituted prejudicial error, warranting reversal of his conviction; and that

---

[7]Williams's testimony was that the windows were already down at the time of the stop in order to "air the car out" after he had smoked a marijuana cigarette while driving on the freeway.

[8]Williams denied he had ever seen the magnetic holder before his arrest, and insisted he had no knowledge it contained cocaine.

4. He received ineffective assistance of counsel with respect to the denial of his second motion to suppress evidence pursuant to Penal Code section 1538.5.

## DISCUSSION

1. *Removal of wristband*

■ Williams contends that by refusing to allow him to remove his in-custody wristband in the presence of the jury, the trial court violated his constitutional rights.[9] We disagree.

■ It is settled that a " '[s]tate cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes.' [Citations.] Such compulsion violates a defendant's right to due process and a fair trial, by undercutting the presumption of innocence which inures to all criminal defendants before a finding of guilt beyond a reasonable doubt. [Citations.] 'The rule is grounded upon the presumption the finder of fact will be influenced adversely by viewing the defendant throughout the trial in garb which constantly suggests his need for incarceration.' " (*People* v. *Pena* (1992) 7 Cal.App.4th 1294, 1303-1304 [9 Cal.Rptr.2d 550].)

■ Here, Williams was not compelled to wear "identifiable prison clothes" in the presence of the jury, but rather he was permitted to dress in his own civilian clothes. What he objected to was not being allowed to remove his in-custody wristband before the prospective jurors were brought in to be sworn. When he first tried to voice this objection, he felt arbitrarily cut off by the trial judge's reference to "[t]he jurors are coming in."

After the jurors were excused and he was given an opportunity to be heard, Williams pointedly questioned the purpose of dressing in civilian clothes while being required to wear a wristband reflecting his in-custody status. The trial judge noted that most jurors "do not know or even observe wrist bands."

This generalization seems to be borne out by the particular facts of the case because there is nothing in the record to indicate that any of the jurors even noticed Williams's wristband or, if some did, that they were sophisticated enough to be aware it signified he was in custody. To those who happened to notice, the wristband could have also symbolized other things

---

[9]There does not appear to be any published California authority addressing this identical issue.

such as hospital identification or outpatient surgical status. It did not necessarily label Williams as one whose credibility was suspect because he could not post bail.

As authority for his contention that the trial court erred in refusing to allow him to remove his wristband, Williams cites *People* v. *Taylor* (1982) 31 Cal.3d 488 [183 Cal.Rptr. 64, 645 P.2d 115]. In that case, a defendant was compelled to stand trial in jail clothes rather than ordinary clothing. The California Supreme Court found reversible error, holding that the trial judge's denial of the defendant's request to dress in street clothes constituted a violation of due process and equal protection. (*Id.* at pp. 494-495.)

The principal difference between *Taylor* and the instant case is that the wristband worn by Williams along with his civilian clothes was far less obvious and more subtle than the prison garb which Taylor was forced to wear. Second, whereas Taylor's in-custody status was highlighted by two prosecution witnesses identifying him in court as the defendant " 'wearing blue county clothes' " and the one dressed in a " 'blue jail suit' " (*People* v. *Taylor, supra,* 31 Cal.3d at p. 500), no mention was made of Williams's wristband during his trial. Third, unlike Taylor (*id.* at p. 501), it does not appear that Williams's credibility was at all influenced by his wristband as a symbol of his incarceration.

Thus, we find that if the trial court's refusal to permit Williams to remove his wristband in any way violated his constitutional rights, it amounted to error that was "harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

2. *The vehicle stop*

██ It is contended by Williams that the stop of his vehicle, after two deputy sheriffs conducted a random license check and found an outstanding traffic warrant, was a violation of his Fourth Amendment rights under the United States Constitution. This contention is without merit.

██ The United States Supreme Court has held that, consistent with the Fourth Amendment, "police may make an investigatory stop of a person, in the absence of probable cause to arrest, when the police have a reasonable suspicion, based on specific and articulable facts, that the person stopped has been involved in a crime." (*People* v. *Conway* (1990) 222 Cal.App.3d 806, 810-811 [271 Cal.Rptr. 832]; *United States* v. *Hensley* (1985) 469 U.S. 221, 226 [83 L.Ed.2d 604, 610, 105 S.Ct. 675].)

"A momentary stop of an automobile by police to investigate a passenger reasonably believed to be involved in a past crime is proper. It creates a

minimal inconvenience to the driver of that automobile, when balanced against the government's interest in apprehending criminals." (*In re William J.* (1985) 171 Cal.App.3d 72, 77 [217 Cal.Rptr. 163].) The government interest includes apprehending individuals with outstanding arrest warrants. (*People* v. *Conway, supra,* 222 Cal.App.3d at pp. 814-815.)

 In the case at bar, the deputies' reason for initiating the traffic stop was to ascertain whether the person named in the warrant, Nelva Smith, was one of the occupants of Williams's vehicle. Based on specific facts showing an apparent connection between the warrant and Williams's vehicle in which two females were passengers, the deputies acted on a reasonable suspicion that one of those females was the subject of the warrant. The government's interest in finding that person, and holding her to answer for her past failure to appear for an expired registration, outweighs the minimal inconvenience to Williams who was required to stop and explain that the vehicle was currently registered to him.

Williams argues that the deputies should have known he was the registered owner of the vehicle, and could have easily determined the current registration by flipping to the last screen on the computer before the intrusive stop which infringed on his constitutional rights.

However, the deputies initiated the stop, without the benefit of hindsight, on the basis of the information available to them at that moment. When one of the deputies ran a license plate check, the first thing that came up on the computer was an arrest warrant issued on Nelva Smith. This immediately established a nexus between Williams's vehicle and the person named in the warrant, so as to justify the investigatory stop which ensued.

Even though it was discovered later that the vehicle was registered to Williams and that neither of the female occupants fit the description of the subject of the warrant, we believe the deputies acted within proper bounds in stopping the vehicle to investigate the warrant.

3. *Use of CALJIC No. 2.03*

 Williams contends that the inclusion of CALJIC No. 2.03 in the jury instructions constituted prejudicial error, warranting reversal of his conviction. This contention is not supported by the evidence.

CALJIC No. 2.03 provides: "If you find that before this trial [a] [the] defendant made a willfully false or deliberately misleading statement concerning the crime[s] for which [he] [she] is now being tried, you may

consider such statement as a circumstance tending to prove a consciousness of guilt. However, such conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are matters for your determination."

The rule on which Williams relies used to be, as stated in *People* v. *Rubio* (1977) 71 Cal.App.3d 757, 769 [139 Cal.Rptr. 750]: "The giving of CALJIC No. 2.03 is justified only if there exists evidence that defendant prefabricated a story to explain his conduct. This instruction is not applicable in the situation where a defendant makes an explanation of behavior to the police which is consistent with his self-serving testimony at trial that conflicts with the prosecution's evidence before the jury." (Italics omitted.)

But the California Supreme Court in *People* v. *Kimble* (1988) 44 Cal.3d 480 [244 Cal.Rptr. 148, 749 P.2d 803], disapproved the line of cases holding that the only admissible pretrial statements are those proved to be false by the contrary testimony of the defendant at trial (*id.* at p. 496), commenting that ". . . it simply does not follow that the jury would necessarily be engaging in 'rank speculation' if it relied on other evidence to determine that the prior statement was false" (*id.* at p. 498), and noting that it is a question of weight, not admissibility. (*Ibid.*)

Moreover, in *People* v. *Edwards* (1992) 8 Cal.App.4th 1092 [10 Cal.Rptr.2d 821], where the falsity of the defendant's pretrial statements was demonstrated not by the inconsistency of those statements with his testimony at trial, but by the testimony of other witnesses, the court expressly said: "In light of *Kimball* [*sic*] . . . it is clear that *People* v. *Rubio* is no longer a correct statement of the law. The giving of CALJIC No. 2.03 is justified when there exists evidence that the defendant prefabricated a story to explain his conduct. The falsity of a defendant's pretrial statement may be shown by other evidence even when the pretrial statement is not inconsistent with defendant's testimony at trial. . . . When testimony is properly admitted from which an inference of a consciousness of guilt may be drawn, the court has a duty to instruct on the proper method to analyze the testimony." (*Edwards*, *supra*, 8 Cal.App.4th at pp. 1103-1104.)

Consequently, Williams's reliance on *People* v. *Rubio* is misplaced. Notwithstanding factual similarities between the two cases, changes in the state of the law since the *Rubio* decision require a different analysis in the instant matter.

Here, Williams's pretrial statement at his suppression hearing that he told the deputy who approached his vehicle " 'all I have in my car is a little marijuana up under the seat' " was consistent with his testimony at trial that

"[b]efore the officer even approached my car, I told the officer I had some marijuana in the car and it was up under the front seat."

Nonetheless, Williams's further testimony at trial that "I don't know nothing about this black box" found underneath his dashboard in which the rock cocaine was contained, provided other evidence from which an inference could be drawn that his pretrial statement was willfully false or made to deliberately mislead the deputies into believing that the marijuana was all he had, in an effort to avert their search for other contraband.

In view of this conflicting evidence, we are of the opinion that the use of CALJIC No. 2.03 was most appropriate, and that ". . . . a result more favorable to appellant would not have occurred had CALJIC No. 2.03 not been given." (*People v. Louis* (1984) 159 Cal.App.3d 156, 162 [205 Cal.Rptr. 306].)

### 4. *Ineffective assistance of counsel*

It is contended by Williams that he was denied effective assistance of counsel at the trial court hearing on his motion to suppress evidence pursuant to Penal Code section 1538.5, in that counsel failed to use certain information crucial to a favorable disposition. We reject this contention.

Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839]; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674, 691-692, 104 S.Ct. 2052].) The right entitles the defendant not to some bare assistance but to effective assistance. (466 U.S. at p. 686 [80 L.Ed.2d at pp. 692-693].) Specifically, it entitles him to the assistance of " 'a reasonably competent attorney' " acting as a vigorous advocate. (*Id.* at p. 687 [80 L.Ed.2d at p. 693].)

To establish a claim for ineffective assistance, the defendant must show that his counsel's performance was deficient (*Strickland v. Washington, supra,* 466 U.S. at p. 687 [80 L.Ed.2d at p. 693]), that is, that "counsel's representation fell below an objective standard of reasonableness . . . [¶] . . . under prevailing professional norms." (*Id.* at p. 688 [80 L.Ed.2d at pp. 693-694].)

In this case, Williams asserts that the performance of trial counsel at his second suppression motion hearing was deficient because counsel failed to invoke the use of the pretrial testimony that the deputy who ran the

license plate check could have easily determined the current ownership of the vehicle by viewing the last page on his computer screen before initiating the stop.[10]

Williams maintains that since this testimony was critical to the magistrate's dismissal of the case at his first preliminary hearing,[11] there is a reasonable probability that, but for counsel's unprofessional error at trial, the result of the hearing on his second motion to suppress would have been different. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *Kimmelman* v. *Morrison* (1986) 477 U.S. 365 [91 L.Ed.2d 305, 106 S.Ct. 2574].)

 Relying on *People* v. *Ramirez* (1983) 34 Cal.3d 541, 552 [194 Cal.Rptr. 454, 668 P.2d 761], in which the California Supreme Court held law officials "responsible for keeping those [official] channels free of outdated, incomplete, and inaccurate warrant information[,]" Williams jumps to the conclusion that the deputies involved here should have been required to use all information reasonably available to them before detaining him.

 A proper response to Williams's assertion is articulated in *People* v. *Dominguez* (1987) 194 Cal.App.3d 1315, 1318-1319 [239 Cal.Rptr. 923]: "To require the officer to wait until the receipt of further information does not secure the societal interest in bringing to court persons for whom a warrant has been issued. The delay which could ensue by requiring police to obtain additional information . . . could permit the subject to flee or otherwise jeopardize the opportunity to serve the warrant or attempt to locate the subject . . . . It would limit such detentions to those rare occasions when the police, based on a hurried look at persons in moving vehicles with clear visibility and under good lighting conditions, could reasonably determine a person matching the description of the person on the warrant was currently present in the vehicle. To do so would give no weight to a public or law enforcement interest in making an arrest of, or obtaining information about the present whereabouts of the person named in the warrant."

 As to Williams's counsel's failure to allude to the deputy's ability to obtain from his computer additional information regarding current registration before initiating the stop, we find that such an omission does not rise

---

[10]Williams was represented by a different attorney at this hearing than the public defender whose motion to suppress the evidence was granted at Williams's first preliminary hearing, but was not resubmitted at the second such hearing.

[11]The specific reason for the magistrate's ruling is not clear from the augmentation of the record, but it was apparently based in part on the availability of current registration information prior to the initiation of the stop.

to the level of unprofessional error, since trial counsel is not required to advance meritless arguments "merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People* v. *Jones* (1979) 96 Cal.App.3d 820, 827 [158 Cal.Rptr. 415].)

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.