Filed 9/17/15  Wofford v. Hollicks CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| SEAN WOFFORD, | B254518 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC469067) |
| v. | |
| NICOLE HOLLICKS et al., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendants and Respondents. | |
| | [No change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on August 20, 2015, be modified as follows.

On page 20, delete the sentence: "The vexatious litigant motion . . ." along with the numbered paragraphs 1-11, and replace with the following:

The vexatious litigant motion shows the following list of litigations by Wofford which qualifies him for vexatious litigant status:

1.     On September 7, 2010, Wofford filed a civil complaint in the Los Angeles Superior Court in *Wofford v. Perez* (LC092377).  The court entered a judgment of dismissal on April 14, 2011 after sustaining a demurrer without leave to amend.  There were no further proceedings.

2.      On February 17, 2011, Wofford filed a civil complaint in the Los Angeles Superior Court in *Wofford v. Howard Sommers Towing* (LC092759). The court entered a judgment of dismissal on May 2, 2011 after sustaining a demurrer without leave to amend.  There were no further proceedings.

3.      On February 14, 2012, Wofford filed a petition in the Los Angeles Superior seeking for relief from the Government Claim statutes (BS136152). The court denied the petition on April 13, 2012.  There were no further proceedings.

4.      On November 20, 2012, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B245212).  The writ petition concerned a proceeding in the Los Angeles County Superior Court (BC481892). The Court of Appeal denied the petition on December 7, 2012.  The Supreme Court denied a petition for review on January 30, 2013.  There were no further proceedings.

5.      On February 22, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B247038).  The writ petition concerned proceedings in the Los Angeles County Superior Court (BC469067). The Court of Appeal denied the petition on March 21, 2013.  There were no further proceedings.

6.      On April 5, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B247890).  The writ petition concerned proceedings in the Los Angeles County Superior Court (BC481892). The Court of Appeal denied the petition on July 12, 2013.  The Supreme Court denied a petition for review on September 18, 2013.  There were no further proceedings.

7.      On November 12, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B252387).  The writ petition

concerned proceedings in the Los Angeles County Superior Court (BC469067). The Court of Appeal denied the petition on November 21, 2013. There were no further proceedings.

8.     In April 2012 in *Wofford v. Thompson* (BC481892) Wofford filed an action for damages for false arrest after he received a traffic ticket for not wearing a seatbelt. The Los Angeles Superior Court dismissed the action on September 26, 2013.

9.     In December 2013 in *Wofford v. Thompson* (B253216) Wofford appealed the adverse judgment in case number BC481892. On April 7, 2015, Division Seven of our court affirmed the judgment. There were no further proceedings.

This modification effects no change in the judgment.

The petition for rehearing filed by Appellant on September 4, 2015 is denied.

_____

BIGELOW, P. J.                              OHTA, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/20/15  Wofford v. Hollicks CA2/8 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SEAN WOFFORD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NICOLE HOLLICKS et al.,<br><br>    Defendants and Respondents. | B254518<br><br>(Los Angeles County<br>Super. Ct. No. BC469067) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Susan Bryant-Deason, Judge.  Affirmed.

Sean Wofford, in pro. per., for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Amy Jo Field, Assistant City Attorney, and Kjehl T. Johansen, Deputy City Attorney, for Defendants and Respondents.

_____

Plaintiff and appellant Sean Wofford filed a complaint for damages against the Los Angeles Police Department (LAPD) and several individual LAPD police officers after two patrol officers issued him a misdemeanor notice to appear for driving without a license and impounded the vehicle that he was driving. Wofford represented himself in litigating his lawsuit. The trial court granted a joint motion for summary judgment (MSJ) filed by all of the LAPD-related defendants, and thereafter entered judgment, including an award for attorney's fees incurred in defending the action. Wofford then filed the present appeal, challenging all elements of the judgment. He remains self-represented on appeal. We affirm the judgment in its entirety. We also grant the LAPD-defendants' motion on appeal for an order declaring Wofford to be a vexatious litigant.

**FACTS**

*Background*

During the afternoon of July 31, 2010, LAPD Officers Nicole Hollick and Edward Bolanos were on patrol in a police vehicle near the intersection of Mulholland Highway and Mulholland Drive when their attention was drawn to a Volkswagen van with an item hanging from the rear-view mirror. The officers ran a "DMV wants/warrants check" of the license plate, which returned information indicating there was a misdemeanor warrant connected to the van. Based on the warrant information, the officers decided to initiate a traffic stop to investigate.[1]

---

[1] According to Officers Hollick and Bolanos, Wofford was driving the van. At his deposition, Wofford testified that he was "traveling" in the van at the time of the traffic stop by the LAPD officers. When asked to explain more precisely what he meant by "traveling," Wofford testified further: "Traveling means exercising the right of locomotion, of changing one's inclination to suit one's destination, going from point A to point B." About stopping the van, Wofford testified: "I yielded to their show of authority. I stopped my personal property. My personal property came to the side of the road. I directed my personality [*sic*] property to the side of the road and came to halt. " Wofford denied he was stopped in the "City of Los Angeles," explaining that the City of Los Angeles is a "body politic." He acknowledged that he was stopped in a geographic area known as "Los Angeles." He denied that "Los Angeles" is located in the "State of California," explaining that the State of California is a "body politic." He acknowledged that the traffic stop events occurred in a geographic area known as "California."

Upon initiating the traffic stop, Officer Hollick approached the person driving the van, Wofford, and asked to see his driver's license, registration, and proof of insurance. Wofford stated that he did not have a driver's license, and then asserted that he was not required to have a driver's license because he was not a "commercial driver." Wofford produced a vehicle registration in the name of Nicki Pedersen, making "some mention" to Officer Bolanos that the van was registered under his mother's name.[2]

Officer Hollick informed Wofford that he had an outstanding warrant,[3] but did not take Wofford into custody on the warrant. Instead, Officer Hollick issued Wofford a citation — a misdemeanor notice to appear — for a violation of Vehicle Code section 12500, driving without a valid license. The officers informed Wofford that the van was going to be impounded.

Wofford had two passengers with him in the van who were licensed drivers, but Officer Hollick and Bolanos would not release the van to either of them because the registered owner of the van, Pedersen, did not give authorization for anyone to drive the vehicle. At some point during the traffic stop, Wofford asked to speak to a supervising officer. LAPD Sergeant Alfredo Flores responded to the location. Sergeant Flores told the other officers to continue impounding the vehicle. Wofford walked away from the scene with his passengers before the van was towed and impounded.

---

[2] During his deposition, Wofford explained that Nicki Pedersen was his mother, and that she had died about two years before the date of the traffic stop.

[3] There is material in Wofford's deposition testimony suggesting that the warrant which precipitated the traffic stop had been issued when Wofford's failed to appear on a traffic citation for a seatbelt violation. The exact warrant information in the possession of Officers Hollick and Bolanos at the time they initiated the traffic stop is not plainly shown in the record before us on appeal, i.e., the MSJ papers did not provide an exact, specific explanation of the warrant information received by the officers in response to their "wants and warrants" check. This said, at no point during the course of his litigation in the trial court, or on appeal, has Wofford ever denied that some nature of warrant information did, in fact, exist.

3

The officers' encounter with Wofford lasted about 30 to 40 minutes, including the time spent waiting for Sergeant Flores to arrive at the scene.

***Post-Impound Events***

On a date not clearly discernible from the record before us on the present appeal, Wofford requested an LAPD "vehicle impound hearing." (See Los Angeles Police Department Manual Section 4/226 et seq.)

In September 2010, Wofford filed a civil action (L.A. Sup. Ct., No. LC092377) for declaratory and injunctive relief based on allegations that the LAPD had failed and was failing to provide him with a prompt post-impound hearing for the release of "his" van. The complaint alleged that the failure to provide such a hearing violated Vehicle Code section 22852 and his right to due process under the California Constitution.[4]

On October 12, 2010, Wofford registered the van in his name. On a date Wofford could not recall, he obtained a driver's license.

On October 21, 2010, LAPD Detective Joseph Perez conducted a hearing on "the matter of the City's authority" to impound the van that Wofford had been driving on July 31, 2010. At the conclusion of the hearing, Detective Perez determined that probable cause existed at time of impound and, accordingly, Wofford was responsible for the impound storage fees.[5]

---

[4] Wofford subsequently filed a first amended complaint in February 2011 seeking damages for the alleged violation of Vehicle Code section 22852 and his right to due process. In April 2011, the trial court entered a judgment of dismissal after sustaining a demurrer without leave to amend. Basically, the trial court ruled that Wofford had no foundation upon which to complain about the impound of the van because he was not its registered owner at the time of the impoundment or at the time he was demanding an LAPD post-impound hearing.

[5] In a narrative explaining his determination, Detective Perez wrote: "There was probable cause found to impound the vehicle. At the time of the impound, Mr. Wofford [*sic*] was not the registered owner of the vehicle. Mr. Wofford stated he had two other passengers in the vehicle that had a valid license. Mr. Wofford stated his vehicle should not have been impounded due to the Community Care Doctrine. However, the officer stated that Mr. Wofford was stopped when they checked the license plate and it came back with a warrant. Mr. Wofford had an expired license and they had probable cause to

4

For a period of time Wofford could not afford the impound fees. He eventually regained possession of the van about nine months after it was impounded.

*The Current Lawsuit and Appeal*

In September 2011, Wofford filed the civil action giving rise to his current appeal. Wofford's complaint alleged five causes of action, listed respectively, as follows: false arrest and false imprisonment pursuant to Government Code section 820.4;[6] violation of civil rights under Civil Code section 52.1; intentional infliction of emotional distress; negligent infliction of emotional distress; and conversion.[7] Wofford's complaint named as defendants LAPD Officers Hollick and Bolanos; LAPD Sergeant Flores; LAPD Chief of Police Charlie Beck; the LAPD; and the City of Los Angeles. We hereafter refer to all of the defendants collectively as the LAPD-related defendants.

The LAPD-related defendants filed a joint MSJ, which was thereafter argued to the trial court. At the conclusion of the hearing, the court granted the MSJ. Further, the court found pursuant to Code of Civil procedure section 1038 that Wofford had brought his action without reasonable cause or a good faith belief that there was a justifiable

---

impound the vehicle. Mr. Wofford was not the registered owner. The registered owner was not with Mr. Wofford and the officers could not release the vehicle. There was probable cause to impound the vehicle."

[6] As the Supreme Court has explained, "false arrest" and "false imprisonment" are not separate torts; rather, a false arrest is but one way of committing the tort of false imprisonment. (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752, fn. 3, citing *Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 673.)

[7] Wofford's complaint included a sixth cause of action labeled "conspiracy." California civil law does not recognize an independent cause of action for conspiracy. Rather: "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 510-511.) Accordingly, we address Wofford's current case on the merits of his underlying alleged torts.

5

controversy. The court set a hearing date for a determination of reasonable costs and attorney's fees incurred in the defense of the action. Wofford's then-pending motion for summary judgment, was taken off calendar as moot.

Wofford filed notice of intent to move for new trial and thereafter filed a memorandum of points and authorities in support. The trial court fixed the amount of attorney's fees in favor of the LAPD-related defendants at $152,120. The trial court signed and entered summary judgment in favor of the LAPD-related defendants. The judgment awards attorney's fees as noted above, plus costs.

The trial court denied Wofford's motion for new trial. Wofford filed a timely notice of appeal.

## DISCUSSION

### The Motion for Summary Judgment was Properly Granted

### I.     False Arrest and False Imprisonment

Wofford contends summary judgment in favor of the LAPD-related defendants must be reversed because he "proved each element" of his first cause of action for false arrest and false imprisonment under Government Code section 820.4. We disagree.

Wofford's cause of action for false arrest and false imprisonment alleged that the LAPD-related defendants "unlawfully arrested [him] without legislative authorization from chapter 2 of division 17 of the Vehicle Code."[8] Wofford's allegations as to his cause of action for false arrest and false imprisonment were wholly unrelated to the impound of the van. Rather, his cause of action, generously construed, alleged that LAPD officers on scene, namely Officers Hollick and Bolanos (and, possibly, Sergeant Flores) did not have any lawful authority to initiate a traffic stop, and did not have any lawful authority to issue him a misdemeanor notice to appear for driving without a valid driver's license. In this vein, Wofford sought damages alleged as follows: "As a direct result of defendants' false [arrest and false] imprisonment, plaintiff was deprived of his

---

[8]     Division 17, Chapter 2, of the Vehicle Code encompasses Vehicle Code sections 40300 through 40618, which govern "Procedure on Arrests."

6

freedom, and suffered severe mental and physical anguish, anxiety, intimidation, and embarrassment."

In *Molko v. Holy Spirit Assn*. (1988) 46 Cal.3d 1092, the Supreme Court defined the tort of false imprisonment as a "'nonconsensual, intentional confinement of a person, *without lawful privilege*, for an appreciable length of time, however short.'" (*Id*. at p. 1123, italics added.) In Wofford's current case, we understand the allegations in his complaint, along with his arguments on appeal, to frame his false arrest and false imprisonment claim in terms of the theory that the police engaged in conduct "without lawful privilege" during the course of the traffic stop giving rise to his current lawsuit. With this framework in place (see *Turner v. Anheuser-Busch, Inc*. (1994) 7 Cal.4th 1238, 1252 [for purposes of a MSJ, the issues are framed by the pleadings]), we now address the correctness of the trial court's decision to summarily resolve Wofford's false arrest and false imprisonment claim.

To the extent the trial court's decision to grant the LAPD-related defendants' MSJ involved a claim by Wofford that the LAPD officers did not have any authority to initiate a traffic stop at all, we find no error. The undisputed evidence in the record shows that Officers Hollick and Bolanos ran a DMV wants/warrants check on the license plate of the van that Wofford was driving. The check came back with information that there was an outstanding warrant associated with the license plate. The officers initiated a traffic stop to investigate. Given these undisputed facts, Wofford cannot establish that he had valid claim that he was falsely arrested or imprisoned based on being stopped. Cases such as *People v. Dominguez* (1987) 194 Cal.App.3d 1315 (*Dominguez*) and *People v. Williams* (1995) 33 Cal.App.4th 467 (*Williams*) teach that police officers may, consistent with the Fourth Amendment, momentarily stop a vehicle to investigate information concerning a warrant associated with the license plate of the vehicle. As stated in *Williams*: "'It creates a minimal inconvenience to the driver of the [vehicle], when balanced against the government's interest in apprehending criminals.' [Citation.] The governmental interest includes apprehending individuals with outstanding arrest warrants.'" (*Williams, supra*, 33 Cal.App.4th at pp. 476-477.)

7

To avoid the conclusion that the police acted lawfully in initiating a traffic stop, Wofford offers a series of arguments in his opening brief on appeal which we read and understand to assert the following propositions:

- he did not commit any "crime" which would justify being stopped by the police; there was no "crime" because he "did not violate anyone's legal rights, or cause anyone injury, loss or harm;"

- he never "consented" to the LAPD's authority; and

- the lawful authority of police officers "extends only to the 'state' or 'body politic,'" meaning the "citizens" of a "political community" in which there are reciprocal duties on the part of the members of the community to give their allegiance to the government and on the part of the government to protect the members of the community. Further, the California Legislature has enacted statutes immunizing police officers for failing to provide protection, and, thus, has abrogated its part of the social pact, freeing members of the community from being citizens. Because "there are no 'citizens' there is no 'body politic'" and, thus, the police have no lawful authority to exert power over any member of the community.

Wofford's arguments and cited authorities do not persuade us to find error in his case. As discussed above, cases such as *Dominguez, supra,* 194 Cal.App.3d 1315 and *Williams, supra,* 33 Cal.App.4th 467 indicate that the police have the lawful authority, consistent with the Fourth Amendment, to stop a vehicle momentarily in order to investigate information concerning a warrant associated with the vehicle. In light of those cases, we find that Wofford could not prevail on his cause of action for false arrest and false imprisonment based on a claim that the LAPD police acted unlawfully in initiating the traffic stop giving rise to his current lawsuit.

To the extent the trial court's decision to grant the LAPD-related defendant's MSJ involved a claim by Wofford that the LAPD officers did not have authority to issue him a citation for a violation of Vehicle Code section 12500, we also find no error. Here, we

8

read and understand Wofford's opening brief on appeal to assert the following propositions:

- he is not a "person" as defined by Vehicle Code section 470 and, thus, is not subject to any Vehicle Code's provision that governs the conduct of a "person;"[9] and
- a driver's license fee is a "privilege tax" or an "excise tax" which may only be levied when a vehicle operator who is engaged in the "occupation" of transporting persons and property upon the public highways "for compensation."

In support of his argument that he is not a "person," Wofford filed a request for judicial notice of "Vehicle Code section 470 and the true signification [*sic*] of its legal meaning under applicable rules of statutory construction," and we granted his request. With this foundation in place, Wofford argues that, in construing section 470, we must apply the interpretational doctrine of *ejusdem generis* in defining the word "person" as it is used in section 470. Wofford argues that, because section 470 defines "person" by referencing "natural person, firm, copartnership, association, limited liability company or corporation" together in a list, we must define the term "natural person" to mean a "legal entity" of a nature similar to the other listed terms in the statute. Wofford concludes that, since he was not a "legal entity" of any kind at the time of the traffic stop, he was not and is a not a "person" as defined in Vehicle Code section 470.

The simple answer to Wofford's proffered interpretation is a more basic rule of statutory construction — namely, that in examining the meaning of a statute's words we must give those words their usual and ordinary meaning. (See, e.g., *Imperial Merchant*

---

**9** Vehicle Code section 470 provides: "'Person' includes a natural person, firm, copartnership, association, limited liability company, or corporation." Vehicle Code section 12500, subdivision (a), provides: "A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code."

*Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) Here, Vehicle Cole section 470 defines "person" to mean a "natural person." Wofford plainly is a "natural person," and, hence, he is a "person." The fact that Vehicle Code section 370 also brings certain identified listed types of legal entities within the reach of the meaning of the word "person" does not negate that a "person" as plainly defined in Vehicle Code section 470 includes a "natural person" such as Wofford.

Next, Wofford cites three cases in support of his argument that, even in the event he is a "person" as defined in the Vehicle Code, he still did not need to have a valid driver's license because only those engaged in the "occupation" of transporting persons or property on the public highways "for compensation" must be licensed. The cases cited by Wofford are *Ingels v. Riley* (1936) 5 Cal.2d 154 (*Ingels*); *Albert Pick & Co. v. Jordan* (1914) 169 Cal. 1 (*Pick*); and *Matter of Application of Stork* (1914) 167 Cal. 294 (*Stork*). None of these cases support the proposition that Vehicle Code section 12500 does not mean what it says, namely, that "[a] person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under [the Vehicle Code]."

In *Stork, supra*, 167 Cal. 294, a "chauffeur" licensed under the Motor Vehicle Act of 1913 (see Stats. 1913, ch. 326, p. 639) filed a petition for writ of habeas to challenge the requirement that he pay an annual license fee of $2, because drivers who were classified as "operators" were not required to secure a license and pay a fee. The Supreme Court found the legislation's classification distinction between a chauffeur and operator to be reasonable. (*Stork, supra*, 167 Cal. at pp. 295-297.) The *Stork* case offers no guidance and has no relevance, as to the meaning or reach of present day Vehicle Code section 12500. *Stork* predates the Legislature's enactment of any statutory scheme even remotely resembling the modern Vehicle Code.

*Pick, supra*, 169 Cal. 1 involved a multi-state business which objected to being required to pay a fee under then-existing statutory law (see former Pol. Code, § 416) to file a copy of its articles of incorporation with the California Secretary of State. A trial court granted a petition for writ of mandate to compel the Secretary not to collect the fee.

10

The Supreme Court reversed. (*Id*. at pp. 2-25.) The *Pick* case has no relevance as to the meaning or reach of present day Vehicle Code section 12500; *Pick* is not even a vehicle-law related case. Further, *Pick* also predates the Legislature's enactment of the modern Vehicle Code.

This leaves Wofford's reliance on *Ingels, supra,* 5 Cal.2d 154. The only issue in *Ingels* was whether the required payment of a fee for a driver's license constituted an "excise tax," a tax on the purchase of property. The tax issue was important in *Ingels* because if the driver's license fee constituted an excise tax, then military veterans were exempt from having to pay the tax under former article XIII, section 1¼, of the state constitution. (*Id*. at p. 156.) The Supreme Court ruled the fee was an excise tax and veterans were not required to pay it. (*Id*. at pp. 159-165.) *Ingels* is irrelevant in defining or fixing the reach of present day Vehicle Code section 12500. The issue in Wofford's current case is not whether he is exempt from paying the fee for a driver's license; the issue in Wofford's case is whether he is required to have a driver's license to drive on the state's roadways.

In the final analysis, California has required for nearly 100 years that all persons who operate motor vehicles on the state's public highways have a driver's license. (See, e.g., Stats. 1917, ch. 218, §§ 18, 20, pp. 407-409.)[10] None of Wofford's arguments or legal authorities persuade us that he is not required to have a driver's license in accord with current Vehicle Code section 12500.

---

[10] The pertinent language from the 1917 legislation reads as follows: "Sec. 24. (a) It shall be unlawful for any person to operate a motor vehicle upon the public highway unless licensed by the department as hereinafter provided . . . . Sec. 27. No person shall operate or drive a motor vehicle . . . upon a public highway after the thirty-first day of December, one thousand nine hundred seventeen, . . . unless the requirements of his act relative . . . to licensing of chauffeurs and operators shall have been in all respects complied with . . . ."

11

## II.    Conversion

Wofford contends summary judgment in favor of the LAPD-related defendants must be reversed because the act of impounding "his" van "pursuant to an unwarranted police seizure" constituted an act of conversion which would support a judgment in his favor on his fifth cause of action for conversion. We disagree.

"Conversion is the wrongful exercise of dominion over the property of another." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543-544.) "The elements of a conversion are the plaintiffs ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." (*Ibid*.)

In light of the law of conversion, particularly the element of "wrongful exercise of dominion" over another's property, and Wofford's contention on appeal regarding "an unwarranted police seizure," Wofford's current case requires us to determine whether the police acted in accord with the law in impounding the van that Wofford was driving. We find the police acted lawfully.

Here, the undisputed facts showed that Wofford was not the registered owner of the van at the time it was towed and impounded. Nor does the evidence in the record demonstrate that he was entitled to possession of the van because the registered owner, Nikki Pedersen, was deceased and apparently died intestate. Wofford claimed ownership of the van during proceedings in the Superior Court, case No. LC092377, but his claim was not vindicated. As reflected in the judgment of dismissal against him in case No. LC092377, the court found he did not have standing to obtain a prompt post-storage hearing for the impounded van because "Mr. Wofford had an expired [driver's] license" and "he was not the registered and legal owner of the vehicle at the time it was impounded." The van was eventually released to him, but only after title was transferred and he registered it in his own name. Because the undisputed facts establish Wofford was not entitled to immediate possession of the van at the time of its alleged conversion, his claim fails. (See *Hartford Financial Corp. v. Burns* (1979) 96 Cal.App.3d 591, 598, citing *Bastanchury v. Times-Mirror Co*. (1945) 68 Cal.App.2d 217, 236 [to prevail on

12

conversion claim, a plaintiff must show that he or she was "entitled to immediate possession at the time of conversion"].)

Wofford argues his personal possession of the van at the time of its alleged conversion by the police was sufficient for him to maintain an action for conversion. Wofford relies on *Igauye v. Howard* (1952) 114 Cal.App.2d 122, 127. While it is correct that a person need not have legal title to property in order to sue for conversion, a claim based on possession must be based on a showing of lawful possession. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 618, p. 713.) Accordingly, a lawful bailee, pledgee, finder or other person with a special or limited interest may sue for conversion. (*Ibid.*)

Assuming Wofford was entitled to possession of the van at the moment the police impounded it, notwithstanding that he did not have title,[11] his conversion claim still fails because the undisputed evidence in the record established that the LAPD police officers lawfully impounded the van. It is undisputed that Wofford did not have a valid driver's license, and, thus, he could not lawfully drive the van away from the traffic stop. In *People v. Torres* (2010) 188 Cal.App.4th 775 (*Torres*), the Court of Appeal held that the police may lawfully impound a vehicle being driven by an unlicensed driver under Vehicle Code section 22651, where the impound is supported by a "community caretaking function," and not merely to deprive the driver of the vehicle the use of the vehicle; for example, the police may impound a vehicle when moving the vehicle will facilitate the free flow of traffic. (*Torres, supra,* at p. 787; and see also *South Dakota v. Opperman* (1976) 428 U.S. 364, 368-369.) As the Ninth Circuit has explained: "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location. [Citations.] The violation of a traffic regulation justifies impoundment of a vehicle if the

---

11      For example, our assumption would have validity if there was an allegation or evidence in this case showing Wofford's mother gave him permission to drive the van before she died, or that he had a lawful successor's interest in the van.

driver is unable to remove the vehicle from a public location without continuing its illegal operation." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 865.)

That was the situation here. Wofford was unable to remove the van from the public location of the traffic stop without continuing its illegal operation because he was an unlicensed driver. Further, because the van's registered owner, Nikki Pedersen, was deceased and could not authorize anyone to drive it, the officers could not release the van to Wofford's passengers. This meant, absent an impoundment, that the officers would be leaving the van on the street until Wofford's license problem and the right of possession problem could be resolved. It goes without saying that the police were not required to leave the van on the street for such an open-ended period of time.

In support of his argument that a community caretaking interest was not served by the impounding of his van, Wofford cites *United States v. Caseres* (9th Cir. 2008) 533 F.3d 1064 (*Caseres*), and *People v. Williams* (2006) 145 Cal.App.4th 756. We find these cases far different from Wofford's case. In *Caseres*, the court ruled there was no community caretaking interest for the impounding of Caseres's car because it was legally parked on a residential street only about two houses away from Caseres's home. The possibility that the vehicle might be stolen, broken into, or vandalized was no greater than if Caseres had returned home, rather than having been arrested, and parked his car on the street. (*Caseres, supra*, 533 F.3d at p. 1075.) In *People v. Williams*, the court held the government made no showing that removal of a vehicle from the street furthered a community caretaking function because it was legally parked in front of defendant's residence, he had a valid driver's license, the car was properly registered to a car rental company, the car had not been reported stolen, and there was no reason to believe the defendant was not in lawful possession of the car. (*People v. Williams, supra*, 145 Cal.App.4th at pp. 762-763.) As discussed above, the situation at the time the officers stopped Wofford were significantly different from those in *Caseres* and *Williams*.

14

**III.    There Was No Evidentiary Error**

Wofford contends summary judgment in favor of the LAPD-related defendants must be reversed because the trial court committed prejudicial error when it took judicial notice of certain court documents presented by the LAPD-related defendants in support of their MSJ. Wofford argues the use of the documents "violat[ed] the rules of evidence" in that only "certified" court records are admissible as evidence. More specifically, he argues that unless a duly authorized court official authenticates that a proffered copy of a document asserted to have been filed in court is a true copy, it is improper to take judicial notice of the existence of the document. We are not persuaded.

We accept Wofford's premise that a document which is proffered as a court-filed document must be authenticated before it may be subject to judicial notice as a court-filed document. (See Evid. Code, § 1400 et seq.; and see also *Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 743.) For purposes of argument, we will assume the court-filed documents proffered in support of the MSJ by the LAPD-related defendants were not properly authenticated. Still, we will not reverse the trial court's decision to grant the MSJ because Wofford has not explained on appeal that a *prejudicial* evidentiary error undermines the validity of the trial court's decision. The critical facts in this case for purposes of the MSJ is that the police had a lawful basis for initiating a traffic stop, and that the police had a lawful basis for impounding the van Wofford was driving. Wofford has not shown that the trial court's use of the proffered court-filed documents, if any, caused any error in the court's decision to grant the MSJ.

**V.    The Trial Court Properly Ruled on the Motion For Summary Judgment**

Wofford contends summary judgment in favor of the LAPD-related defendants must be reversed because the court did not hear his cross-MSJ. We disagree.

Upon the granting of the LAPD-related defendants' MSJ, Wofford's then-pending MSJ became moot. The cases cited by Wofford on appeal simply do not support the rule that a trial court is required to rule on a pending MSJ after it has been rendered moot by a prior ruling. For example, in *Sentry Ins. Co. v. Superior Court* (1989) 207 Cal.App.3d 526, the trial court refused to hear a MSJ filed within the time limits of the MSJ statute,

15

apparently concerned about the press of its business and its calendar. In *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, a trial court sent motions for summary adjudication to a court-appointed referee without the parties' consent, then granted a MSJ based on the referee's rulings. In *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, the trial court granted a MSJ without allowing a hearing on the motion. In *Robinson v. Woods* (2008) 168 Cal.App.4th 1258, a trial court entered orders effectively altering the statutory timing requirements for a MSJ, then granted the motion. Such a situation does not exist in Wofford's current case; his MSJ became moot when the court ruled on the MSJ by the LAPD-related defendants.

## VI.    The Award of Attorney's Fees Was Appropriate

Wofford contends the trial court "committed prejudicial error" when it awarded attorney's fees to the LAPD-related defendants under Code of Civil Procedure section 1038.[12] Wofford argues the record includes "circumstantial evidence" showing he filed and litigated his action in a "good faith belief" that there was a "justifiable controversy" between the parties. We find no error.

### Section 1038

When a plaintiff sues a government official or entity for damages, and the official or entity prevails on a MSJ, section 1038, subdivision (a), provides: "[T]he court . . . shall, at the time of the granting of [the MSJ] . . . determine whether or not the plaintiff . . . brought the proceeding with [1] reasonable cause *and* [2] in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint . . . . If the court should determine that the proceeding was not brought in good faith *and* with reasonable cause, . . . the court shall render judgment in favor of [the prevailing] party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party. An award of

---

**12**    Hereafter section 1038.

16

defense costs under this section shall not be made except on notice contained in a party's papers and an opportunity to be heard." (Italics added.)[13]

Section 1038 thus prescribes two required components for an award of attorney's fees to a defendant who prevails on a MSJ. "Reasonable cause" is an objective standard in which the inquiry is whether any reasonable party or attorney would have thought the case was tenable. (See *Carroll v. State of California* (1990) 217 Cal.App.3d 134, 140.) The absence of "good faith" involves a factual inquiry into the plaintiff's subjective state of mind. Did he or she actually believe there was a justifiable controversy under the facts and law which warranted the filing of the complaint, and what was his intent or purpose in pursuing it? (See *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932, overruled on a different ground *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.) Because the good faith issue is factual, the question on appeal will be whether there is evidence in the record sufficient to sustain the trial court's finding. (*Knight, supra,* 4 Cal.App.4th at p. 932.)

### *Wofford Forfeited This Claim*

The LAPD-related defendants contend Wofford forfeited any and all challenges to the award of attorney's fees under section 1038 because he did not offer any objection or argument in the trial court in opposition to their motion for attorney's fees under section 1038. We agree.

Wofford had multiple opportunities to develop a record allowing for meaningful review of the issues he raises on appeal. First, the LAPD-related defendants filed the MSJ, which included a request for findings under section 1038 supporting an award of attorney's fees. Wofford's opposition to the MSJ did not address section 1038. Next, Wofford appeared at the hearing on the MSJ on September 13, 2013. During that hearing, the trial court announced its tentative decision to find that Wofford brought his

---

[13] Under section 1038, subdivision (b), "defense costs" as used in the section, "shall include reasonable attorneys' fees, expert witness fees, the expense of services of experts, advisers, and consultants in defense of the proceeding, and where reasonably and necessarily incurred in defending the proceeding."

17

action "without reasonable cause or [a] good faith belief that there was [a justiciable] controversy" within the meaning of section 1038. Wofford's ensuing argument did not address the section 1038 issue. Wofford had a further opportunity to respond to the LAPD-related defendants' written motion in October 2013 to fix the amount of its reasonable attorney's fees, and to argue at the hearing on December 23, 2013, when the court addressed the issue and fixed those fees at $152,120 (rather than the $271,555 requested).

Because Wofford failed to offer any evidence or argument concerning his state of mind, i.e., his good faith, in bringing and litigating his action, and because that issue is fact-driven, he may not raise arguments involving that issue. "As a general rule, failure to raise a point in the trial court constitutes [a] waiver and appellant is estopped to raise that objection on appeal." (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

### *The Trial Court Properly Awarded Attorney's Fees*

Assuming that Wofford has not waived any of his claims on appeal concerning the award of attorney's fees in favor of the LAPD-related defendants, his arguments have not persuaded us to reverse the trial court's award. The record and arguments presented by Wofford in the trial court and on appeal, which are extensively discussed above, support a finding that Wofford had no objective, "reasonable cause" for pursuing his action for damages against the LAPD-related defendants. This leaves only the issue of whether he pursued his action for damages in a subjective, "good faith" belief that he had viable claims against the LAPD-related defendants. Because the record contains evidence to support the conclusion that Wofford did not have such a subjective, good faith belief in his case, we will not reverse the trial court's decision to award attorney's fees. We have little doubt that Wofford has a strong belief in the righteousness of the ideology that underpinned his decision to pursue his lawsuit for damages against the LAPD-related defendants, but we see nothing in the record to support a conclusion that he had a subjective, good faith belief in the validity of the legal grounds that underpinned his lawsuit.

18

## VII. The Motion for Vexatious Litigant Status

The LAPD-related defendants have filed a motion on appeal for an order declaring Wofford to be a vexatious litigant and subject to a pre-filing order in any further litigation which he pursues without counsel. (See Code Civ. Proc., § 391 et seq.) We hereby grant the motion.

A "'[v]exatious litigant' means a person who does any of the following:

(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.

(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

19

(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." (Code Civ. Proc., § 391, subd. (b).)

"Litigation" means any civil action or proceeding, commenced, maintained or pending in any state or federal court. (Code Civ. Proc. § 391, subd. (a).) A litigation includes an appeal or civil writ proceeding filed in an appellate court. (*McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1216.)

The Legislature's intent with respect to the vexatious litigant statutes is "'to curb misuse of the court system'" by "'persistent and obsessive litigants'" "'acting in propria persona who repeatedly relitigate the same issues.'" (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220-221.)

The vexatious litigant motion shows the following list of litigation by Wofford which qualifies him for vexatious litigant status:

1. On October 30, 2008, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B211736). The writ concerned two cases in the Los Angeles County Superior Court (BS117382 and R932487). The Court of Appeal denied the petition on November 5, 2008. There were no further proceedings.

2. On November 26, 2008, Wofford filed a petition for writ of mandate in the Los Angeles County Superior Court in *Wofford v. Superior* (BS118046). The court denied the petition on December 1, 2008. There were no further proceedings.

3. On February 25, 2010, Wofford filed a petition for writ of certiorari in the Court of Appeal in *Wofford v. Superior Court* (B222496). The writ

20

concerned proceedings in the Los Angeles County Superior Court's Appellate Division (BR046932 and 551205). The Court of Appeal denied the petition on March 10, 2010. There were no further proceedings.

4.      On September 7, 2010, Wofford filed a civil complaint in the Los Angeles Superior Court in *Wofford v. Perez* (LC092377).[14] The court entered a judgment of dismissal on April 14, 2011 after sustaining a demurrer without leave to amend. There were no further proceedings.

5.      On February 17, 2011, Wofford filed a civil complaint in the Los Angeles Superior Court in *Wofford v. Howard Sommers Towing* (LC092759). The court entered a judgment of dismissal on May 2, 2011 after sustaining a demurrer without leave to amend. There were no further proceedings.

6.      On February 14, 2012, Wofford filed a petition in the Los Angeles Superior seeking for relief from the Government Claim statutes (BS136152). The court denied the petition on April 13, 2012. There were no further proceedings.

7.      On November 20, 2012, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B245212). The writ petition concerned a proceeding in the Los Angeles County Superior Court (BC481892). The Court of Appeal denied the petition on December 7, 2012. The Supreme Court denied a petition for review on January 30, 2013. There were no further proceedings.

---

**14**     As noted above, Joseph Perez was an LAPD Detective who acted as the hearing officer at an impound hearing initiated by Wofford.

8.     On February 22, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B247038).  The writ petition concerned proceedings in the Los Angeles County Superior Court (BC469067).  The Court of Appeal denied the petition on March 21, 2013.  There were no further proceedings.

9.     On April 5, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B247890).  The writ petition concerned proceedings in the Los Angeles County Superior Court (BC481892).  The Court of Appeal denied the petition on July 12, 2013.  The Supreme Court denied a petition for review on September 18, 2013.  There were no further proceedings.

10.    On July 15, 2014, Wofford filed a petition for writ of mandate in the Los Angeles County Superior Court (BS149850).  The court denied the petition on July 17, 2014.  There were no further proceedings.

11.    On November 12, 2013, Wofford filed a petition for writ of mandate in the Court of Appeal in *Wofford v. Superior Court* (B252387).  The writ petition concerned proceedings in the Los Angeles County Superior Court (BC469067).  The Court of Appeal denied the petition on November 21, 2013.  There were no further proceedings.

The list of unsuccessful litigation summarized above establish that Wofford is a vexatious litigant as defined in Code of Civil Procedure section 391, subdivision (b)(1), in that:  "In the immediately preceding seven-year period [he] has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been . . . finally determined adversely to [him]."  Even assuming that some of the above-noted petitions for writ of mandate matters in the Court of Appeal

22

are counted together as being only "one litigation" because they involve the same underlying proceeding in the Los Angeles Superior Court (for example, B245212 and B247890 involved proceedings in BC481892; and B247038 and B252387 involved proceedings in BC469067), Wofford has still had far more than five litigations determined adversely to him in the proceeding seven years.

## DISPOSITION

The judgment is affirmed in its entirety.[15] In addition, Sean Wofford is declared to be a vexatious litigant. (Code Civ. Proc., § 391, subd. (b)(1).) This opinion shall serve as a pre-filing order prohibiting Wofford from filing any new litigation in the courts of this state without first obtaining leave from the presiding judge or justice. (Code Civ. Proc., § 391, subd. (a).) We direct this court's clerk to provide a copy of this opinion and order to the Judicial Council. (Code Civ. Proc., § 391.7., subd. (f).) Respondents to recover costs on appeal.


BIGELOW, P.J.

We concur:


FLIER, J.


OHTA, J.[*]

---

[15] All motions not expressly discussed in this opinion are hereby denied.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23