Filed 1/13/25  P. v. Thornberry CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>DANIEL LEE THORNBERRY,<br><br>     Defendant and Appellant. | D083497<br><br><br>(Super. Ct. No. SCD299576) |


APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed as modified and remanded with directions.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum, and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.


Daniel Lee Thornberry appeals the judgment sentencing him to prison and ordering him to pay fines and fees after a jury found him guilty of bank

robbery. He contends his trial counsel provided ineffective assistance by failing to seek pretrial mental health diversion. Thornberry also contends the $5,000 restitution fine the court imposed is unconstitutionally excessive and deprived him of property without due process of law. He contends the abstract of judgment must be corrected to eliminate all other fines and fees, which he says the trial court struck, or, at a minimum, to itemize the penalty assessments and surcharge added to the theft fine. Thornberry alternatively requests we vacate all fines and fees and remand the matter for a full hearing on his ability to pay them. We modify the judgment to include an itemization of the penalty assessments and surcharges for the theft fine, affirm the judgment as modified, and remand the matter for preparation of an amended abstract of judgment that includes the itemization.

## I.

## BACKGROUND

### A. *Current Crime*

Thornberry entered a bank, approached a teller, and handed the teller a note stating he had C-4 explosives in his backpack and demanding $100,000. The teller responded he had no cash. Thornberry became angry and warned the teller "it was a serious situation" and the teller should comply. The teller became frightened, opened a coin drawer, and gave Thornberry $41 worth of coins. Thornberry took the coins and the note and left the bank. He was later arrested.

### B. *Charges, Verdicts, and Findings*

The People charged Thornberry with robbery. (Pen. Code, § 211; subsequent undesignated section references are to this code.) They alleged he had three prior convictions of bank robbery, each of which constituted a serious felony for purposes of a five-year enhancement (§ 667, subd. (a)) and a

2

strike for purposes of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12). The People further alleged Thornberry had served a prior state prison term (Cal. Rules of Court, rule 4.421(b)(3)) and was on parole when he committed the current crime (*id.*, rule 4.421(b)(4)). The jury found defendant guilty of robbery. Thornberry waived his right to a trial on the allegations concerning prior convictions, service of a prior prison term, and parole status at the time of the current crime, and admitted the allegations.

C.   *Sentencing*

Thornberry filed a sentencing brief in which he asked the trial court to strike the allegations concerning two of his prior convictions (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1994) 13 Cal.4th 497) and to sentence him as a second-strike offender to prison for nine years. The requested sentence consisted of the lower term of two years for the robbery conviction (§ 213, subd. (a)(2)), doubled to four years based on the remaining prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), plus a consecutive term of five years for the remaining prior serious felony conviction (§ 667, subd. (a)(1)). Thornberry argued the prior conviction allegations should be stricken because imposition of a third-strike sentence would be disproportionate to the severity of his current crime, he committed his most recent prior crime in 2010, his mental health problems and drug addiction played a role in his crimes, and he is law-abiding when he takes his medications. Thornberry also argued his "psychological, physical, or childhood trauma" supported imposition of the lower term. (§ 1170, subd. (b)(6)(A).)

Attached to the sentencing brief was a report from a psychologist to whom trial counsel had referred Thornberry for "evaluation to determine what, if any, mitigating factors exist and should be considered." The report states that Thornberry said he had "endur[ed] and surviv[ed] verbal abuse,

3

homophobia, and recurring rejection and invalidation from his father while growing up," and he "revealed he is homosexual and has a history of being sexually assaulted." The report stated Thornberry has had severe mental health problems, including delusions, hallucinations, and multiple suicide attempts, and has abused alcohol and drugs since he was 14 years old. Based on the interview and the results of several psychological tests, the psychologist diagnosed Thornberry with schizoaffective disorder (depressive type) and amphetamine-type substance use disorder (severe). The psychologist noted these diagnoses were supported by Thornberry's "reported history of continued episodes of psychosis, delusions, and departures from reality"; "notable depressive mood disruptions and dysregulations that coincide with these periods of psychosis"; and "disruptions in relationships, settings, and abilities to function." The psychologist also noted Thornberry "operates at a below average cognitive capacity," which is "likely a result of combined psychosis and long-term amphetamine use" and "can also contribute to poor decision making, difficulties with impulse-control, emotional dysregulation, and ineffectual coping." The report states that Thornberry "expressed openness to therapeutic treatment and a desire to change to improve his life circumstances."

The People submitted a sentencing brief in which they urged the trial court to sentence Thornberry as a third-strike offender to prison for 25 years to life for the robbery conviction (§§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii)), plus a consecutive term of 15 years for the three prior serious felony convictions (§ 667, subd. (a)(1)). They argued he is the type of habitual criminal the Three Strikes law was designed to punish. The People alternatively argued that if the court did not sentence Thornberry as a third-strike offender, it should sentence him as a second-strike offender to an

4

aggregate prison term of 20 years. That term consisted of the upper term of five years for the robbery conviction (§ 213, subd. (a)(2)), doubled to 10 years based upon a prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), plus a consecutive term of 10 years for two prior serious felony convictions (§ 667, subd. (a)(1)).

At the sentencing hearing, the court stated it had reviewed the parties' briefs and the probation officer's report. After hearing Thornberry's counsel's summary of her sentencing brief, the court allowed Thornberry to read a prepared statement he described as an "appeal for leniency." He told the court that three weeks before the robbery he "had walked away from a sober living program" so that he could "rescue a friend" who had been kicked out of the same program. The friend had repeatedly asked Thornberry to rob a bank to obtain money the friend could use to go to Colorado to take care of his dying ex-wife. Thornberry "felt it was [his] moral obligation to help a friend in need," and at the time "felt [he] was doing the right thing" by robbing the bank. He realized later his decision to do so was "dysfunctional and somewhat delusional," took "full responsibility," and offered "apologies and remorse." The prosecutor described Thornberry's reasons for robbing the bank as "not very compelling" and asked the court to sentence him in accordance with the People's sentencing brief.

The trial court refused to strike the prior convictions for purposes of the Three Strikes law. As reasons for its refusal, the court stated: (1) bank robbery is "a very serious crime" that can have "catastrophic consequences"; (2) Thornberry was arrested and convicted of new felony charges every time he had been released from custody on supervision; (3) he committed felonies while incarcerated; (4) he left the sober living facility and stopped taking his medications, even though he knew taking them was required for his mental

5

illnesses; and (5) the public needed protection from the violence he has been unable to control. The court struck the prior convictions for purposes of the five-year enhancements, and sentenced Thornberry to prison for 25 years to life.

The court also ordered Thornberry to pay fines and fees as listed in the probation officer's report. These included: (1) a $10,000 restitution fine (§ 1202.4, subd. (b)(1)); (2) a $10,000 parole revocation restitution fine (§ 1202.45, subd. (a)); (3) a $41 theft fine (§ 1202.5, subd. (a)); (4) a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and (5) a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)). Thornberry's counsel requested the court "consider reducing some of the fines . . . for an inability to pay," because Thornberry was "going to prison for a significant period of time" and "was "unemployed and unhoused." The probation officer's report, which the court reviewed, stated Thornberry was "transient" when he was arrested for the current crime, had been unemployed since 1994, and had no savings. In response to counsel's request, the court stated: "Okay. I will reduce the fines to [$]5,000. I know when you're in custody . . . if you're working in the facility, they'll take that out. And I will reduce it given his inability to pay, but I think there should be some restitution fines imposed in this matter." Counsel said nothing more about the fines and fees.

## II.

## DISCUSSION

Thornberry challenges the robbery conviction on the ground his trial counsel provided ineffective assistance by failing to request pretrial mental health diversion. He also challenges the trial court's imposition of fines and fees based on inability to pay and inadequate itemization. We consider the challenges in turn.

6

A.    *Ineffective Assistance of Counsel*

Thornberry complains his trial counsel was incompetent for failing to request pretrial diversion based on his mental illnesses.  He contends that because he was presumptively eligible for diversion and the evidence against him was overwhelming, there was "no conceivable tactical reason for trial counsel not to request pretrial diversion" and thereby require the court to determine his suitability.  We disagree.

The federal and state Constitutions provide a criminal defendant the right to the assistance of counsel.  (U.S. Const., 6th Amend.; *Gideon v. Wainwright* (1963) 372 U.S. 335 [6th Amend. right to counsel binds states through 14th Amend.]; Cal. Const., art. I, § 15.)  The right guaranteed is the right to *effective* assistance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 686; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  To establish a deprivation of that right, the defendant must show:  (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  (*Strickland*, at pp. 688, 694; *Ledesma*, at pp. 216, 217–218.)  Counsel has wide latitude in making tactical decisions, and judicial scrutiny of counsel's performance must be highly deferential.  (*Strickland*, at p. 689; *Ledesma*, at p. 216.)  Unless the defendant shows the contrary, we presume counsel acted competently and her actions and inactions can be explained as a matter of sound trial strategy.  (*People v. Bell* (2019) 7 Cal.5th 70, 125; *People v. Ramirez* (2023) 98 Cal.App.5th 175, 212.)  If the record on appeal sheds no light on why counsel failed to act in the manner the defendant claims she should have, the defendant must show there was no conceivable tactical purpose for the failure.  (*Bell*, at p. 125; *People v. Centeno* (2014) 60 Cal.4th 659, 675.)

7

Thornberry has not met his burden on appeal to establish ineffective assistance of trial counsel. There is nothing in the record about whether counsel considered requesting pretrial diversion and, if so, why she decided not to do so. Before trial, counsel referred Thornberry to a psychologist "to determine what, if any, mitigating factors exist and should be considered." The psychologist diagnosed Thornberry with schizoaffective disorder and methamphetamine use disorder and stated he suffered from delusions. But the psychologist did not state whether Thornberry was having delusions or other symptoms when he committed the current crime or how, if at all, his mental illnesses contributed to the crime; and the report contains no mention of pretrial mental health diversion. At the sentencing hearing, Thornberry did not attribute the current crime to his mental illnesses. He told the court that by robbing the bank, he "felt [he] was doing the right thing" and fulfilling his "moral obligation to help a friend in need." Based on this information, which counsel presumably had before trial, she reasonably could have believed the court would show leniency in sentencing based on Thornberry's mental illnesses, as she urged the court to do, but would not find any "mental disorder was a *significant factor* in the commission of the charged offense." (§ 1001.36, subd. (b)(2), italics added.) Without such a finding, the court could not grant diversion. (*People v. Banner* (2022) 77 Cal.App.5th 226, 239.)

Even were the trial court to find Thornberry eligible for pretrial diversion, the record contains information from which counsel reasonably could have concluded the court would not have found him suitable. The suitability criteria require that the defendant's mental disorder respond to treatment and that the defendant agree to comply with treatment. (§ 1001.36, subd. (c)(1), (3).) The probation officer and the evaluating

8

psychologist reported that Thornberry had left his treatment facility and stopped taking his prescribed medications before he committed the current bank robbery and a prior one. The probation officer stated Thornberry "has been arrested and convicted of new felony charges every time he was released from custody on supervision." Based on Thornberry's past performance, counsel reasonably could have concluded the court would find Thornberry could not safely be treated in the community, because he would not comply with treatment or because treatment would not prevent future criminality, and thus was unsuitable for pretrial diversion. (See § 1001.35, subd. (a) [purpose of mental health diversion "is to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety"]; *Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 138, fn. 6 [noting legislative purpose to "divert[ ] individuals who may be safely treated in the community"].)

In sum, Thornberry has not shown his trial "counsel could have [had] no reasonable tactical purpose" for not requesting pretrial diversion. (*People v. Gurule* (2002) 28 Cal.4th 557, 626.) Counsel need not make a request she has reasonable cause to believe will not be granted "merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Constancio* (1974) 42 Cal.App.3d 533, 546; accord, *People v. Williams* (1995) 33 Cal.App.4th 467, 481.) Thornberry has not met his burden to obtain relief on appeal for ineffective assistance of trial counsel. (*People v. Mickel* (2016) 2 Cal.5th 181, 200; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

B.     *Fines and Fees*

Thornberry attacks the trial court's imposition of fines and fees on three grounds. First, he argues the court reduced the restitution fine to $5,000 and eliminated all other fines and fees listed in the probation officer's

report, and the others must be stricken from the abstract of judgment. Second, he argues that even if the court did not eliminate the other fines and fees, it did not properly itemize the multiple components of the $41 theft fine. Third, he argues the $5,000 restitution fine is unconstitutionally excessive, and its imposition violated his right to due process of law. As we explain below, only the second argument has merit.

1.     *Non-restitution Fines and Fees*

We reject Thornberry's argument the trial court imposed a restitution fine and struck all the other fines and fees included in the probation officer's report. The report listed: (1) a $10,000 "[r]estitution fine pursuant to PC1202.4(b)"; (2) an "[a]dditional [$10,000] restitution fine pursuant to PC1202.45"; (3) a $41 "[t]heft [f]ine pursuant to PC1202.5"; (4) a $40 "[c]ourt [s]ecurity [f]ee pursuant to PC1465.8"; (5) a $30 "[c]riminal [c]onviction [a]ssessment pursuant to GC70373"; and (6) $41 in "[victim] [r]estitution per PC1202.4(f)." At the sentencing hearing, the court did not award victim restitution, which had not been claimed; but it ordered Thornberry "to pay the fines and fees as indicated on page 13 of the report[,] including the restitution fine of $10,000 and the stayed restitution fine."[1] The court's shorthand reference to the probation officer's report, which included the amounts and statutory bases for the fines and fees, sufficed to impose them. (*People v. Hartley* (2016) 248 Cal.App.4th 620, 636; *People v. Hamed* (2013) 221 Cal.App.4th 928, 939–940 (*Hamed*).)

By agreeing to "reduce the fines to [$]5,000," the trial court did not, as Thornberry erroneously contends, strike all fines and fees except the

---

[1]     The "stayed restitution fine" is a parole revocation restitution fine, which must be imposed in the same amount as the restitution fine and execution of which is suspended unless parole is revoked. (§ 1202.45, subds. (a), (c).)

restitution fine. The court ordered the reduction in response to the request of Thornberry's counsel that the court "consider reducing *some* of the fines . . . for inability to pay," because Thornberry "was unemployed and unhoused" and would be "going to prison for a significant period of time." (Italics added.) The court alluded to the ability to earn wages while working in prison and then stated: "I will reduce it given his inability to pay, but I think there should be some *restitution fines* imposed in this matter." (Italics added.) As we read the record, the trial court granted counsel's request by reducing the two largest fines—the restitution fine and parole revocation restitution fine—from $10,000 each to $5,000 each. But the court left unaffected by its inability-to-pay determination the other, much smaller fine and fees it had previously imposed through incorporation by reference of the probation officer's report. (See *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1101 [court may consider ability to earn wages in prison in imposing $240 court operations fee and $180 criminal conviction assessment]; *People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1376–1377 [same as to setting amount of restitution fine].)

2.     *Itemization of Theft Fine*

Thornberry argues that if we conclude, as we do, that the trial court did not strike all fines and fees except the $5,000 restitution fine, then we must order modification of the abstract of judgment to set out the separate components of the theft fine that add up to $41. The People agree the abstract correctly lists the total amount of the fine and do not oppose our ordering Thornberry's requested modification "for clarity." We grant the request.

The trial court did not identify the various components of the theft fine on the record, and instead merely incorporated by reference the total fine

11

included in the probation officer's report.  Although reciting in detail the base fine amount and all the associated penalties, surcharges, and assessments may be tedious, they must be itemized and included in the abstract of judgment so that the Department of Corrections and Rehabilitation can forward deductions from a prisoner's wages to the appropriate state or local agency.  (*Hamed, supra*, 221 Cal.App.4th at p. 940; *People v. High* (2004) 119 Cal.App.4th 1192, 1200 (*High*).)  We may modify the judgment to include the required itemization and need not remand the matter to the trial court to do so.  (§ 1260; *Hamed*, at p. 940; *People v. Stone* (1999) 75 Cal.App.4th 707, 717–718.)

The judgment is modified to include the following itemization of the $41 theft fine:

1.  $10 base fine.  (§ 1202.5, subd. (a).)

2.  $10 state penalty.  (§ 1464, subd. (a)(1).)

3.  $2 state surcharge.  (§ 1465.7, subd. (a).)

4.  $5 state court construction penalty.  (Gov. Code, § 70372, subd. (a)(1).)

5.  $7 county penalty.  (Gov. Code, § 76000, subd. (a)(1).)

6.  $2 penalty for support of emergency medical services.  (Gov. Code, § 76000.5, subd. (a)(1).)

7.  $1 penalty for support of the county DNA identification fund.  (Gov. Code, § 76104.6, subd. (a)(1).)

8.  $4 penalty for support of the state DNA identification fund.  (Gov. Code, § 76104.7, subd. (a).)

(See *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528–1530 [discussing components of theft fine].)  Upon remand, the trial court must prepare an amended abstract of judgment that includes the itemization and

forward a copy to the Department of Corrections and Rehabilitation. (*High, supra*, 119 Cal.App.4th at pp. 1200–1201.)

  3. *Constitutionality of Restitution Fine*

  As his final claim of error, Thornberry contends imposition of the $5,000 restitution fine violated constitutional prohibitions against excessive fines and deprivations of property without due process of law because he cannot pay the fine and was not given a full hearing on ability to pay. We disagree.

  Thornberry did not preserve this claim for appellate review. The trial court was required to impose a restitution fine in an amount not less than $300 and not more than $10,000. (§ 1202.4, subd. (b)(1).) In exercising its discretion to set the amount of the fine above the statutory minimum, the court could consider Thornberry's ability to pay. (*Id.*, subd. (c).) At the sentencing hearing, when Thornberry's counsel asked the court to "consider reducing some of the fines . . . for an inability to pay," the court reduced the restitution fine from $10,000 as recommended in the probation officer's report to $5,000 "given his inability to pay." Counsel did not request a further reduction and never mentioned the due process clause or excessive fines clause of the federal or state Constitution. "No reason appears why [Thornberry] should be permitted to appeal the sentencing court's imposition of [the reduced restitution fine] after having thus tacitly assented below." (*People v. Trujillo* (2015) 60 Cal.4th 850, 859.) He forfeited the claim alleging constitutional violations. (See, e.g., *People v. McCullough* (2013) 56 Cal.4th 589, 593; *People v. Evers* (2023) 97 Cal.App.5th 551, 556; *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4.)

13

Even had Thornberry not forfeited the claim, it would fail. As we shall explain, he has shown no violation of the excessive fines clauses or the due process clauses.

Criminal defendants may not be punished by "excessive fines." (U.S. Const., 8th Amend.; *Timbs v. Indiana* (2019) 586 U.S. 146, 150 [excessive fines clause of 8th Amend. applies to states through 14th Amend.]; Cal. Const., art. I, § 17.) A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334 (*Bajakajian*); accord, *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Considerations relevant to excessiveness include the defendant's culpability, the correlation between the harm caused and the fine amount, the fine amounts prescribed by similar statutes, and the defendant's ability to pay. (*People ex rel. Lockyer*, at p. 728.)

Thornberry's culpability was high. Bank robbery is a "violent felony" (§ 667.5, subd. (c)(9)) and a "serious felony" (§ 1192.7, subd. (c)(19)), and the current offense was his fourth bank robbery. Thornberry caused significant harm. Although he obtained only $41 from the bank, he demanded $100,000 and frightened the teller with a note stating he had explosives in his backpack. The $5,000 fine the court imposed is less than the maximum authorized fine of $10,000 (§ 1202.4, subd. (b)(1)) and less than the $7,500 calculated by multiplying the minimum fine ($300) by the number of years of imprisonment (at least 25) and the number of felony convictions (one) (*id.*, subd. (b)(2)). After finding Thornberry could not pay the $10,000 fine recommended by the probation officer, the court alluded to his ability to earn wages in prison and reduced the fine to $5,000. Although Thornberry was unemployed and had no savings when he robbed the bank, " '[a]bility to pay does not necessarily require existing employment or cash on hand.' " (*People*

14

*v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.)  In setting the amount of the restitution fine, the court could consider his ability to earn wages while in prison.  (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1077; *Hennessey*, at p. 1837.)  Thornberry contends it is not "realistic" to expect him to be able to pay the restitution fine, because his "physical and mental impairments have precluded him from finding gainful employment."  Although such impairments may disqualify him from some prison jobs, since the record does not indicate he can do no job, the trial court could infer he can do something to earn wages in prison.  (*Hennessey*, at p. 1837; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1377, fn. 6.)  Prison wages "currently range from $12 to $56 a month."  (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 (*Jones*); see Dept. of Corrections and Rehabilitation, Operations Manual (Jan. 1, 2024) ch. 5, art. 12, § 51120.6, p. 371.)  Half of those wages can be deducted to pay the restitution fine.  (§ 2085.5, subd. (a).)  Hence, Thornberry should be able to earn enough to pay the restitution fine during the 25 years to life he has been sentenced to prison.

Based on the above considerations, we conclude Thornberry has not shown the $5,000 restitution fine was "grossly disproportional to the gravity of [his] offense."  (*Bajakajian, supra*, 524 U.S. at p. 334.)  We therefore reject his claim the fine violates the excessive fines clauses.

We also reject Thornberry's argument the $5,000 restitution fine violated his right to due process of law.  (See U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a).)  Thornberry bases his argument on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164 (*Dueñas*), which held due process requires a stay of execution of a restitution fine "unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine."  This court has rejected

15

*Dueñas*'s due process analysis as applied to restitution fines, which are intended to punish defendants, and held defendants asserting inability to pay should instead challenge such fines under the excessive fines clause. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794–795; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96, review granted Nov. 13, 2019, S257844.) As we have explained, Thornberry's restitution fine is not unconstitutionally excessive.

Even were we to apply the due process analysis of *Dueñas, supra*, 30 Cal.App.5th 1157, to the restitution fine, we would uphold it. The trial court did not hold a separate hearing on Thornberry's ability to pay the restitution fine, but at the sentencing hearing the court was aware of his unemployment, homelessness, lack of savings, and mental and physical impairments, which were documented in the probation officer's report and the report of the psychologist who evaluated Thornberry. The court considered those reports and, in response to counsel's request that it reduce the restitution fine, found Thornberry could not pay the $10,000 fine the probation officer had recommended but could pay a $5,000 fine from wages he would earn in prison. He has identified no additional information bearing on his ability to pay that the court should have considered but did not. We thus conclude Thornberry has not presented a meritorious inability to pay argument under *Dueñas*. (*Jones, supra*, 36 Cal.App.5th at p. 1035.)

## III.
## DISPOSITION

The judgment is modified to include the following itemization of the components of the $41 theft fine: (1) base fine of $10 (Pen. Code, § 1202.5, subd. (a)); (2) state penalty of $10 (*id.*, § 1464, subd. (a)(1)); (3) state surcharge of $2 (*id.*, § 1465.7, subd. (a)); (4) state court construction penalty of $5 (Gov. Code, § 70372, subd. (a)(1)); (5) county penalty of $7 (*id.*, § 76000,

16

subd. (a)(1)); (6) penalty of $2 for the support of emergency medical services (*id.*, § 76000.5, subd. (a)(1)); (7) penalty of $1 for support of the county DNA identification fund (*id.*, § 76104.6, subd. (a)(1)); and (8) penalty of $4 for support of the state DNA identification fund (*id.*, § 76104.7, subd. (a)). As so modified, the judgment is affirmed. Upon remand the trial court shall prepare an amended abstract of judgment that includes the itemization for the theft fine and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

IRION, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

17